IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SERGEI KOVALEV,

                        Plaintiff,
     v.

LIDL US, LLC, et al.,

                   Defendants.

CIVIL ACTION
NO. 21-3300

## OPINION

**Slomsky, J.**                                   **December 21 2022**

TABLE OF CONTENTS

I.   **INTRODUCTION** ................................................................................................ 1

II.  **BACKGROUND** .................................................................................................. 2

   A.   Parties ............................................................................................................. 2

   B.   Facts ............................................................................................................... 4

   C.   Procedural History ......................................................................................... 6

      1.   Lidl Defendants' Motion ......................................................................... 6

      2.   H&S Defendants' Motion......................................................................... 7

      3.   Lidl Stiftung's Motion ............................................................................ 8

III. **STANDARDS OF REVIEW** ............................................................................... 8

   A.   Motion to Dismiss Standard Under Federal Rule of Civil Procedure
       12(b)(2) - Personal Jurisdiction .................................................................... 8

B.   Motion to Dismiss Standard under Federal Rule of Civil Procedure
12(b)(6) - Failure to State a Claim ........................................................................ 9

C.   Pro Se Representation Requires the Court
to Construe Plaintiff's Complaint Liberally ..................................................... 10

D.   Motion to Strike Standard under Federal Rule of
Civil Procedure 12(f) ............................................................................................ 11

IV.  ANALYSIS ........................................................................................................................ 12

A.   Lidl Stiftung's Motion to Dismiss under Federal Rule
of Civil Procedure 12(b)(2) for Lack of Jurisdiction ...................................... 12

B.   Motions to Dismiss Certain Counts under Federal Rule of
Civil Procedure 12(b)(6) for Failure to State a Claim ................................... 21

1.   Count II: Breach of Express Warranty .......................................................... 21

2.   Count IV: Breach of Implied Warranty of Fitness for a Particular Purpose ................ 25

3.   Count VI: Negligence Per Se ............................................................................ 28

4.   Count VII: Negligent Infliction of Emotional Distress ................................. 29

i. Contractual or Fiduciray Duty ..................................................... 31

ii. Physical Impact ............................................................................... 32

iii. Zone of Danger ............................................................................... 34

iv. Bystander (Witnessing a Tortious Act
Conducted Against a Close Relative) ........................................... 35

5.   Count VIII: Fraud and Fraudulent Misrepresentation ............................... 35

6.   Count IX: Reckless Endangerment ................................................................. 38

7.   Count X: Violation of Pennsylvania Unfair Trade
Practices and Consumer Protection Law ....................................................... 39

8.   Count XI: Unjust Enrichment ....................................................... 41

9.   Punitive Damages ....................................................... 43

C.   Motions to Strike Allegations from the Complaint ........................................................ 45

**V.   CONCLUSION** ....................................................... 46

## I.   INTRODUCTION

This matter arises from the purchase of allegedly moldy loaves of bread.  Defendants Lidl US, LLC and Lidl US Operations, LLC (the "Lidl Defendants") supply and operate stores where Plaintiff, Sergei Kovalev, purchased the bread.  Defendant Lidl Stiftung & Co. KG ("Lidl Stiftung") is a German limited partnership[1] and is the parent company of Lidl Defendants. Defendants H&S Bakery, Inc. and H&S Holdings Corporation (the "H&S Defendants") are the manufacturers of the bread.  Does 1 through 10 are unidentified Defendants.  The above-named entities collectively will be referred to as "Defendants."  In an Amended Complaint, Plaintiff alleges claims against Defendants under Pennsylvania common and statutory law.  (Doc. No. 34.)

Defendants have filed various motions in this case.  First, Lidl Defendants filed a Motion to Dismiss Certain Counts and Strike Allegations from Plaintiff's Amended Complaint (the "Lidl Defendants' Motion").  (Doc. Nos. 41, 66.)  Second, H&S Defendants filed a Motion to Dismiss Certain Counts and Strike Allegations from Plaintiff's Amended Complaint (the "H&S Defendants' Motion").  (Doc. No. 70.)  Lastly, Lidl Stiftung filed a Motion to Dismiss Plaintiff's Amended Complaint for Lack of Jurisdiction and, in the Alternative, to Dismiss Certain Counts and Strike Allegations from Plaintiff's Amended Complaint ("Lidl Stiftung's Motion").  (Doc. No. 73.)

For reasons discussed below, the Court will: (1) grant in part and deny in part Lidl Defendants' Motion to Dismiss; (2) grant in part and deny in part H&S Defendants' Motion to Dismiss; and (3) grant Lidl Stiftung's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  The Court will deny Lidl Defendants' and

---

[1]   Plaintiff refers to Lidl Stiftung both as a limited partnership (Doc. No. 34 ¶ 5) and as a company.  (Id. ¶¶ 5, 31.)

H&S Defendants' Motions to Strike.  The Court need not rule on Lidl Stiftung's Motion to Strike because its Motion to Dismiss is being granted.

## II.    BACKGROUND

### A.  Parties

Because Defendants in this case have nearly similar names, the Court will provide a brief description of each Defendant.

There are three Lidl Defendants: (1) Lidl Stiftung; (2) Lidl US, LLC; and (3) Lidl US Operations, LLC.[2]

Lidl Stiftung is a German limited partnership.[3]  (Doc. No. 34 ¶ 5.)  Plaintiff claims that Lidl Stiftung "expanded itself into the United States markets by creating in the United States . . . [Lidl Defendants and Lidl US Management, Inc.[4]] . . . ."  (Id. ¶ 33.)  Lidl Stiftung "represent[s] an international supermarket chain" and executes its operational and managerial responsibilities "by using the United States Agents [Lidl Defendants and Lidl US Management, Inc.] to control its retail empire in the United States."  (Id. ¶ 31.)  Further, Plaintiff characterizes Lidl Stiftung as "a corporate parental company for all additional Lidl Defendants . . . [and] controlling all Lidl companies operating within U.S. territorial limits."  (Id. ¶ 5.)

Lidl US, LLC is a subsidiary of Lidl Stiftung and is a Delaware limited liability company.  (Id. ¶¶ 9-10.)  It is "registered to conduct business under the laws of the State of Pennsylvania" and has a fictitious name registered with the Pennsylvania Department of State. (Id. ¶ 10.)  Lidl US, LLC has its principal place of business in Arlington, VA.  (Id. ¶ 11.)  It

---

[2]    As noted, the latter two Defendants are referred to as "Lidl Defendants."

[3]    But see n.1, supra.

[4]    Lidl US Management, Inc. is not named as a defendant in this case.

creates and distributes Lidl food products and supplies with the assistance of other entities.  (Id. ¶ 12.)  Specifically, Plaintiff alleges that "Lidl US, LLC is an agent and alter ego of Lidl Stiftung . . . where unity of control exists through a parent Lidl Stiftung . . . openly exercising substantially total ownership control over the management and activities of Lidl US, LLC and Lidl US Operations, LLC."  (Id. ¶ 38.)

Lidl US Operations, LLC is also a Delaware limited liability company authorized to conduct business in Pennsylvania and is registered with the Pennsylvania Department of State. (Id. ¶ 15.)  It has the same principal place of business as Lidl US, LLC.  (Id. ¶ 16.)  Plaintiff states that Lidl US Operations, LLC is an "agent and alter ego" of Lidl US, LLC.  (Id. ¶¶ 13, 18.)  Plaintiff claims that this relationship is derived from "Lidl US, LLC openly exercising substantially total ownership control over the management and activities of Lidl US Operations, LLC."  (Id. ¶ 46.) Lidl US Operations, LLC is "assigned a role for operation and maintenance of [the] supermarket chain."  (Id. ¶ 44.)

Plaintiff alleges that there is a parent-subsidiary relationship among the Lidl parties and that they are "operating members of the same corporate umbrella strategy created to reduce financial liability by splitting the same entity into multiple jointly controlled and operated companies."  (Id. ¶¶ 17-19.)  At the top of this corporate hierarchy is Lidl Stiftung, which Plaintiff characterizes as "the sole and/or major equity member of Lidl US, LLC."  (Id. ¶ 17.)  Lidl US, LLC owns Lidl US Operations, LLC, and therefore the latter operates as the subsidiary and agent of the former.  (Id. ¶ 18.)  Lidl's marketing materials state that Lidl is a "family-owned business" and "jointly call[] their United States operations as 'Lidl US.'"  (Id. ¶ 34.)  Further, Plaintiff states that Lidl Stiftung and Lidl Defendants are part of "one family owned-and-operated company that

divided its large financial holdings into [a] multitude of different companies directly controlled by the same family members." (<u>Id.</u> ¶ 35.)

The H&S Defendants are entities that manufacture Lidl's bread.  (<u>Id.</u> ¶ 21.)  Plaintiff's Amended Complaint avers that "Lidl Defendants with [the] participation of H&S Defendants[,] sold to Mr. Kovalev already contaminated and dangerous bread." (<u>Id.</u> ¶ 57.)  H&S Defendants have registered a trademark with the Pennsylvania Department of State.  (<u>Id.</u> ¶ 25.)  They are Maryland corporations with a shared principal office in Maryland.  (<u>Id.</u> ¶¶ 22-23.)

As a final note, Plaintiff states:

[A]ll Defendants were acting in the capacities of partners, superiors, agents, servants, associates, employees, management and supervising entities, joint venture, accomplices, conspirators and/or co-conspirator[s] of each other. . . . Defendants are liable for all causes of action set forth below under the theories, including but not limited to, of actual agency, apparent agency, ratification, respondeat superior, direct liability, assumption of liability, negligent contracting, negligent retaining, negligent supervision, inadequate training and/or failure to train.

(<u>Id.</u> ¶¶ 27-28.)

**B.  Facts[5]**

Plaintiff purchased loaves of bread from two Lidl locations.  (<u>Id.</u> ¶¶ 53, 67.)  The first purchase occurred on March 19, 2021.  (<u>Id.</u> ¶ 53.)  A receipt copied in the Amended Complaint shows that Plaintiff purchased eight loaves of bread on that date.  (<u>Id.</u>)  The packaging describes the bread as "New & Improved" and Lidl's website touts its products as "High Quality."  (<u>Id.</u> ¶¶ 54, 115, 118.)  Plaintiff states that "each package of '12 Grain Bread' was manufactured under Lidl's name[] [and] was distributed[] and sold by Lidl." (<u>Id.</u> ¶ 54.)  Further, "Lidl's name [was] printed on each package, including Lidl's address and telephone number."  (<u>Id.</u>)

---

[5]   The facts are taken from the Amended Complaint and are accepted as true at the Motion to Dismiss stage.

Plaintiff ate the first package of bread over a period of about two days and subsequently became ill.  (Id. ¶ 60.)  According to Plaintiff, the bread he ate was "extensively contaminated with dangerous disease-causing toxic mold (toxic fungus)," and he was unaware of its presence before ingesting the bread.  (Id. ¶¶ 57-58, 60.)  After eating bread from the first package, Plaintiff experienced "difficulty breathing [and] abdominal pain and discomfort."  (Id. ¶ 60.)  Plaintiff then decided to eat bread from a second package and "became violently sick with nausea, vomiting, abdominal pains and cramps, and severe general malaise."  (Id. ¶ 61.)  He inspected the bread and discovered various-colored mold.  (Id.)  Mold was also in the remaining packages he had purchased.  (Id. ¶ 62.)  Plaintiff states that he "sufferer[ed] from abdominal discomfort, some pain, and respiratory issues" for days.  (Id. ¶ 63.)

On June 21, 2021, almost three months later, Plaintiff purchased four packages of "Enriched White Bread" from a different Lidl store located at 9175 Roosevelt Boulevard, Philadelphia, Pennsylvania.  (Id. ¶¶ 66, 69.)  This packaging also contained a "New & Improved" sticker.  (Id. ¶ 71.)  He alleges that as he was consuming it, he "discovered a large piece of black substance baked inside [the] bread."  (Id. ¶ 70.)  Plaintiff's Amended Complaint characterizes the material as a "foreign object and/or dirt, and/or rodent/rat excrement."  (Id.)  Given that Plaintiff had partially consumed a piece of the bread without knowing whether he had ingested any of the black substance, he was "appalled and severely traumatized."  (Id. ¶¶ 72-73.)  He explains that he experienced "immediate mental anguish and emotional distress," that he was "terrified and placed in extreme fear of his life, safety, and well-being," that he experienced sleeplessness as well as "loss of enjoyment of life," and that the "incident continues to cause him [at the] present time mental anguish and emotional distress" which he is "struggling to overcome . . . but to no avail." (Id. ¶¶ 73-76.)  Plaintiff also alleges that he "suffered a physical impact," "was in danger and at

risk of an immediate injury," and experienced "emotional harm, mental and psychological distress." (<u>Id.</u> ¶¶ 172, 174.)  The Amended Complaint details Plaintiff's concerns of potential future bodily harm, such as cancer or damage to his organs. (<u>Id.</u> ¶¶ 77-81.)

### C. Procedural History

On March 29, 2021, Plaintiff filed his original Complaint in the Philadelphia Court of Common Pleas.  (Doc. No. 1 ¶ 1.)  Plaintiff brought his action against Defendants Lidl US, LLC and Does 1 through 10.  (Doc. No. 1-1.)  On July 23, 2021, Defendants removed the case to this Court.  (Doc. No. 1.)  Plaintiff then filed an Amended Complaint on February 3, 2022, with the following parties as Defendants: (1) Lidl US, LLC; (2) Lidl US Operations, LLC; (3) Lidl Stiftung; (4) H&S Bakery, Inc.; (5) H&S Holdings Corporation; and (6) Does 1 through 10.  (Doc. No. 34.)

In his Amended Complaint, Plaintiff asserts the following claims: (1) strict liability (Count I); (2) breach of express warranty (Count II); (3) breach of implied warranty of merchantability (Count III); (4) breach of implied warranty of fitness for a particular purpose (Count IV); (5) negligence (Count V); (6) negligence <u>per se</u> (Count VI); (7) negligent infliction of emotional distress ("NIED") (Count VII); (8) fraud and fraudulent misrepresentation (Count VIII); (9) reckless endangerment (Count IX); (10) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count X); and (11) unjust enrichment (Count XI). (<u>Id.</u> at 23–43.)  He also seeks punitive damages.  (<u>Id.</u> ¶¶ 82-94, 112, 127, 139, 148, 159, 169, 175, 187, and 198.)

### 1. Lidl Defendants' Motion

On February 24, 2022, Defendants Lidl US, LLC, Lidl US Operations, LLC, and Lidl Stiftung filed the Motion to Dismiss Certain Counts and Strike Allegations from Plaintiff's Amended Complaint.  (Doc. No. 41.)  Specifically, Defendants move to dismiss, under Federal

Rule of Civil Procedure 12(b)(6), Counts II, IV, VI, VII, VIII, IX, X, and XI of the Amended Complaint and the claim for punitive damages.  (Doc. No. 41-3 at 1.)  Defendants also move to strike under Federal Rule of Civil Procedure 12(f) paragraphs 82 to 94, 112, 127, 139, 148, 159, 163, 166, 169, 171, 175, 187, 194, 195, 196, and 198 of the Amended Complaint for containing immaterial, impertinent, or scandalous matter.  (Id.)  Lidl Defendants do not seek dismissal of Counts I (strict liability), III (breach of implied warranty of merchantability), or V (negligence). (Id.)

On March 4, 2022, Lidl Stiftung and Lidl US Operations, LLC moved to withdraw their participation in the above motion, which the Court granted.  (Doc. Nos. 45-46.)  On March 22, 2022, Plaintiff filed a Response in Opposition to the initial motion.  (Doc. No. 52.)  Lidl US, LLC filed a Reply to the Response on March 29, 2022.  (Doc. No. 53.)  On July 5, 2022, the Court held a hearing on the Motion to Dismiss and Strike with counsel for Defendants and Plaintiff, who appeared pro se.  At the hearing, Lidl US Operations, LLC joined Lidl US, LLC's initial Motion to Dismiss and Strike (the "Lidl Defendants' Motion").  (Doc. No. 66.)  On July 25, 2022, Plaintiff filed a Response in Opposition to Lidl Defendants' Motion.  (Doc. No. 67).  Lidl Defendants' Motion has been fully briefed and is ripe for disposition.

### 2.  H&S Defendants' Motion

On August 10, 2022, the H&S Defendants filed the Motion to Dismiss Certain Counts and Strike Allegations from Plaintiff's Amended Complaint (the "H&S Defendants' Motion").  (Doc. No. 70.)  Similar to Lidl Defendants, H&S Defendants move to dismiss Counts II, IV, VI, VII, VIII, IX, X, and XI of the Amended Complaint and the claim for punitive damages under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 70-2 at 1.)  H&S Defendants also move to strike paragraphs 82 to 94, 112, 127, 139, 148, 159, 163, 166, 169, 171, 175, 187, 194, 195, 196, and

198 of the Amended Complaint under Federal Rule of Civil Procedure 12(f).  (Id.)  On August 24,

2022, Plaintiff filed a Response in Opposition to H&S Defendants' Motion.  (Doc. No. 72.)

### 3.  Lidl Stiftung's Motion

On August 31, 2022, Lidl Stiftung filed its Motion to Dismiss Plaintiff's Amended

Complaint for Lack of Jurisdiction and, in the Alternative, to Dismiss Certain Counts and Strike

Allegations from Plaintiff's Amended Complaint ("Lidl Stiftung's Motion").  (Doc. No. 73.)  Lidl

Stiftung first moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal

jurisdiction.  (Doc. No. 73-1 at 1.)  It also moved to dismiss the same counts and the claim for

punitive damages under Federal Rule of Civil Procedure 12(b)(6) that Lidl Defendants and H&S

Defendants moved to dismiss.  (Id.)  In addition, it moved to strike the same paragraphs of the

Amended Complaint as Lidl Defendants and H&S Defendants under Federal Rule of Civil

Procedure 12(f).  (Id.)  On September 12, 2022, Plaintiff filed a Response in Opposition to Lidl

Stiftung's Motion.  (Doc. No. 74.)

## III.    STANDARDS OF REVIEW

### A.  Motion to Dismiss Standard under Federal Rule of Civil
### Procedure 12(b)(2) – Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides that a motion to dismiss may be filed

when the court does not have personal jurisdiction over a defendant.  "Once challenged, the

plaintiff bears the burden of establishing personal jurisdiction."  O'Connor v. Sandy Lane Hotel

Co., 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted).  To show personal jurisdiction, the

plaintiff may rely on the allegations in the complaint, affidavits, or other evidence.  Metcalfe v.

Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation and citation

omitted).  However, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely

on the allegations in its complaint."  Deardorff v. Cellular Sales of Knoxville, Inc., Civil Action

No. 19-2642-KSM, 2020 WL 5017522, *1, *2 (E.D. Pa. Aug. 25, 2020) (emphasis in the original) (citation omitted).  If the court "does not conduct [an] evidentiary hearing . . . [the] plaintiff need only plead [a] <u>prima</u> <u>facie</u> case" of jurisdiction to defeat a motion to dismiss.  <u>Carteret Sav. Bank</u> <u>v. Shushan</u>, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).  In deciding a motion to dismiss for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  <u>Id.</u> (citations omitted).

### B.  Motion to Dismiss Standard under Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Claim

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  After <u>Iqbal</u> it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  <u>Id.</u> at 678 (citation omitted); <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  <u>Tatis v. Allied Interstate, LLC</u>, 882 F.3d 422, 426 (3d Cir. 2018) (quoting <u>Iqbal</u>, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>

Applying the principles of <u>Iqbal</u> and <u>Twombly</u>, the Third Circuit in <u>Santiago v. Warminster</u> <u>Twp.</u>, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a District Court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). This "plausibility pleading standard" is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

"[A] complaint must do more than allege the plaintiff's entitlement to relief. . . . [it must] 'show' such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citation omitted).

### C. Pro Se Representation Requires the Court to Construe Plaintiff's Complaint Liberally

Courts are required to construe a pro se complaint liberally. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "[H]owever inartfully pleaded," the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)) (internal quotations omitted). A pro se litigant's complaint may only be dismissed in

10

part or in full if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 520–21 (citations omitted).

The Third Circuit has held that although a complaint filed by pro se litigants must be construed liberally, it is necessary that the complaint "allege sufficient facts . . . to support a claim." Rivera v. Monko, 37 F.4th 909, 914 (3d Cir. 2022) (citation omitted).  Liberal construction of a pro se litigant's pleadings requires the court to "interpret them to raise the strongest arguments suggested therein." Talbert v. Corr. Dental Assocs., Civil Action No. 18-5112, 2020 WL 6530317, at *1 (E.D. Pa. Nov. 5, 2020) (citation omitted).

### D.  Motion to Strike Standard under Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading . . .  any redundant, immaterial impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court may use its discretion to strike certain components of a pleading in order to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citation omitted).  However, a court must use strict discretion in granting a movant's request to strike allegations from a Complaint because "[m]otions to strike are generally disfavored."  Brown v. LM Gen. Ins., Civil Action No. 21-2134, 2021 WL 3809075, at *2 (E.D. Pa. Aug. 26, 2021).  "Striking . . . a portion of a pleading is a drastic remedy to be resorted to only when required for the purposes of justice." Champ v. USAA Ins., No. 5:20-cv-01238, 2020 WL 1694372, at *2 (E.D. Pa. Apr. 7, 2020) (internal quotation and citation omitted).

 The standard is high and Rule 12(f) motions are "usually . . . denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issue." Perma-Liner Indus. v. United States Sewer & Drain, Inc., 630 F.

11

Supp. 2d 516, 526 (E.D. Pa. 2008) (quoting North Penn Transfer, Inc. v. Victaulic Co. of Am., 859

F. Supp. 154, 159 (E.D. Pa. 1994)).

## IV.    ANALYSIS

The Motions under consideration are practically identical with the exception of Lidl

Stiftung's Motion to Dismiss for Lack of Jurisdiction.  They will therefore be addressed in tandem.

Unless otherwise noted, the analysis applies to all Motions and all Defendants.

### A.  Lidl Stiftung's Motion to Dismiss Under Federal Rule
   of Civil Procedure 12(b)(2) for Lack of Jurisdiction

In its Motion to Dismiss, Lidl Stiftung asserts that the Court does not have general or

specific jurisdiction over it.  (Doc. No. 73-1 at 6-9.)  This assertion is supported with the following

facts: (1) Lidl Stiftung is a German entity; (2) it employs Lidl Defendants to operate the American

locations of its stores rather than to exert daily influence over them itself; (3) Lidl US, LLC

oversees the creation and distribution of food for the American locations and Lidl US Operations,

LLC manages these locations; and (4) Lidl Defendants are not Lidl Stiftung's alter ego.  (Id.)  Lidl

Defendants themselves do not contest this Court's jurisdiction over them.

Plaintiff, in his Response, states:

Nobody [is] disputing that Defendant Lidl Stiftung & Co. KG is a company
registered in Germany. However, it has no meaning that Lidl Stiftung & Co. KG is
not under [the] jurisdiction of this Court. This Defendant is a parent company
tightly controlling (as a family enterprise) operations of all other Defendants in this
case.

(Doc. No. 74 at 10-11.)  Thus, it appears that Plaintiff agrees that the Court does not have general

jurisdiction over Lidl Stiftung independent of the Lidl Defendants.

It is axiomatic that a court must have personal jurisdiction over a party and if general

personal jurisdiction is lacking, specific personal jurisdiction will suffice.  See generally D'Jamoos

ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citation omitted).

A court may exercise general jurisdiction over a nonresident party when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citations omitted).

As noted, Plaintiff agrees that this Court does not have general jurisdiction over Lidl Stiftung by itself.  But Plaintiff then attempts to argue that this Court has specific jurisdiction over Lidl Stiftung through an alter ego theory.  He notes as follows:

> This Court can exercise subject matter and personal jurisdiction over Defendant Lidl Stiftung & Co. KG, because Defendant Lidl Stiftung & Co. KG has sufficient minimum contacts with this forum through a principal-agency and alter ego relationship with Defendants Lidl US, LLC and Lidl US Operations, LLC.

(Doc. No. 74 at 18.)

Thus, based on Lidl Stiftung's relationship to Lidl Defendants, over which the Court has personal jurisdiction,[6] Plaintiff maintains that this Court has specific jurisdiction over Lidl Stiftung as well.  (See id. at 7, 10-13, 15-19.)

The test for specific jurisdiction entails a three-step analysis.  First, the court must evaluate whether the defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)).  Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts.  Ford Motor, 141 S. Ct. at 1025 (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty., 137 S. Ct. 1773, 1780 (2017)).  Third, if the first two requirements have been met, the court may consider whether exercising personal jurisdiction over the defendant "offend[s] traditional notions of fair

---

[6]   It is uncontested that this Court has personal jurisdiction over Lidl Defendants.

play and substantial justice." Ford Motor, 141 S. Ct. at 1024 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)).

If the court finds that the above factors are satisfied, it may exercise specific jurisdiction over a nonresident party like Lidl Stiftung.  Plaintiff's pro se Amended Complaint, however, does not address these three jurisdictional factors, except for repeatedly using terms that relate to his alter ego theory of jurisdiction, infra, such as "control," "parent company," and "alter ego." (See Doc. No. 34.)[7]

---

[7]  Plaintiff does seem to argue that this Court has specific jurisdiction over Lidl Stiftung by itself when he states the following in his responsive brief.

  Plaintiff's Amended Complaint clearly satisfied all elements of the jurisdiction inquiry and Defendant Lidl Stiftung & Co. KG is a subject of this Court [sic] Jurisdiction[.]  [First – Defendant purposefully directed its activities at the forum. See Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).  Second – Plaintiff's claims arise out of or relate to at least one of those specific activities.  See Helicopteros, 466 U.S. at 414.]  Moreover[,] and in addition, in this situation, exercising jurisdiction also can [be] asserted with "traditional notions of fair play and substantial justice . . ."

(Doc. No. 74 at 10.)

However, in this passage, he only asserts the elements of specific jurisdiction and provides no supporting facts apart from his claim that Lidl Stiftung is subject to personal specific jurisdiction.

In Shuker v. Smith & Nephew, PLC, the plaintiffs sued the manufacturer of a hip replacement component, Smith & Nephew, as well as Smith & Nephew's parent company, PLC.  885 F.3d 760, 765 (3d Cir. 2018).  The court wrote:

  To the extent the Shukers seek to establish specific personal jurisdiction over PLC without reference to the stream-of-commerce theory, their allegations do not meet our Circuit's requirement of purposeful availment: "what is necessary is a deliberate target of the forum," so efforts "to exploit a national market" that

14

In some cases, a nonresident party like Lidl Stiftung may also be a parent entity of a co-defendant.  If a court does not have specific jurisdiction over the nonresident, parent defendant under the three-part test described above for specific jurisdiction, a plaintiff still has an alternative method of proving jurisdiction: establishing that the co-defendant subsidiary's jurisdictional contacts may be attributed to the parent.  See Schrotberger v. Doe, 21-cv-0364-JMY, 2022 WL 4072962, at *6 (E.D. Pa. Sept. 1, 2022).  This, however, is difficult to accomplish.  See Reynolds v. Turning Point Holding Co., LLC, Case No. 2:19-cv-01935-JDW, 2020 WL 953279, at *3 (E.D. Pa. Feb. 26, 2020) ("Courts have noted a 'strong presumption' against piercing a corporate veil or deeming companies alter-egos of each other.") (citations omitted).

Plaintiff pursues this option in his Response to the Motion to Dismiss by copying the following, which is alleged in the Amended Complaint:

> All Defendants . . . are operating members of the same corporate umbrella strategy created to reduce financial liability exposure and to gain tax advantages by splitting the same entity into multiple intimately controlled and jointly operated companies. All these companies are subsidiaries, direct agents, and alter ego of Lidl Stiftung & Co. KG that exercises direct family control over all U.S. enterprises that are nothing less but agents controlled by the same Lidl Stiftung & Co. KG.  To be specific, Lidl Stiftung & Co. KG controls Lidl US, LLC that in descending manner owns and controls Lidl US Operations, LLC.  As a result, it is Lidl Stiftung & Co. KG that

---

"necessarily included Pennsylvania" are insufficient.  Yet, nationally directed efforts are all that the Shukers alleged here, for their factual allegations state only that PLC sold its products through Smith & Nephew in Pennsylvania as part of its efforts to sell products in the United States generally – not in Pennsylvania specifically.

Id. at 780. (citations omitted).

Here, Plaintiff similarly asserts that Lidl Stiftung "expanded itself into the United States markets by creating in the United States . . . [Lidl Defendants]." (Doc. No. 34 ¶ 33.) He does not assert that it was Lidl Stiftung's intention to solely target the Pennsylvania market, nor could he because Lidl supermarkets are in multiple states.  (See id. ¶ 32.) Therefore, Plaintiff fails to meet the first element of a specific jurisdictional analysis—purposefully directing its activities at the forum.

directly controls all of its subsidiaries, Lidl US, LLC and Lidl US Operations, LLC.
. . .

(Id. at 13; Doc. No. 34 ¶¶ 47-48.)

Thus, it appears that Plaintiff is arguing that this Court has personal jurisdiction over Lidl Stiftung emanating from its control over Lidl Defendants. Plaintiff's argument, however, is unavailing.

One of the most common means of attributing the subsidiary's jurisdictional contacts to the parent is to establish that a subsidiary is the parent's alter ego. See Schrotberger, 2022 WL 4072962, at *6 ("Under the alter ego theory, if a subsidiary is merely the agent of its parent corporation or the parent corporation controls the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary.") (citations omitted); Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 420-21 (E.D. Pa. 2005) (discussing the alter ego theory in the context of general jurisdiction); Botwinick v. Credit Exch., Inc., 213 A.2d 349, 352-54 (Pa. 1965). Historically, to show that a subsidiary is an alter ego, a plaintiff had to allege facts showing the following:

> gross undercapitalization [of the subsidiary], failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation [the subsidiary] is merely a facade for the operations of the dominant stockholder.

Action Mfg., 375 F. Supp. 2d at 421-22 (citations omitted).

More recently, the following factors have been emphasized:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive

16

distributor; and (10) receipt by the officers of the related corporation of instruction
from the principal corporation.

Neopart Transit, LLC v. CBM N.A., et al., 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018).  These

factors are "a non-exclusive guide to help resolve the broader issue of whether the companies

have a 'single functional and organic identity.'"  Schrotberger, 2022 WL 4072962, at *6 (citation

omitted).  In Neopart, the court further stated that "the most significant pieces of evidence are

those that concern the existence (or non-existence) of a parent company's control over its

subsidiaries' day-to-day functions."  Neopart, 314 F. Supp. 3d at 645 (citations omitted); see also

Schrotberger, 2022 WL 4072962 at *6 ("To establish alter ego jurisdiction, 'a plaintiff must

prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary

can be said to be a mere department of the parent.'") (citation omitted); Deardorff v. Cellular

Sales of Knoxville, Inc., Civil Action No. 19-2642-KSM, 2022 WL 309292, at *2 (E.D. Pa. Feb.

1, 2022) (stating that the alter ego test also considers "whether the degree of control exercised by

the parent is greater than normally associated with common ownership and directorship . . . .")

(citations omitted).

Additionally, the following are not sufficient to establish personal jurisdiction over the

nonresident, parent corporation: (1) a parent's ownership of a subsidiary; (2) a shared name

among the entities; (3) occupying the same office space; (4) issuing a "unified marketing image";

or (5) maintaining a company website noting that the companies "consider[] themselves a single

team or group."  Action Mfg., 375 F. Supp. 2d at 418, 420, 425; Botwinick, 213 A.2d at 353-54;

Kehm Oil v. Texaco, Inc., 537 F.3d 290, 301 (3d Cir. 2008) (citation omitted); Neopart, 314 F.

Supp. 3d at 645-46; see also Schrotberger, 2022 WL 4072962, at *7 (E.D. Pa. Sept. 1, 2022);

Deardorff, 2022 WL 309292, at *7; Reynolds, 2020 WL 953279, at *4.

17

Here, Plaintiff does not allege facts to prove that Lidl Defendants are the alter ego of Lidl Stiftung. Specifically, in the Amended Complaint, he fails to plead sufficient facts in support of the factors in <u>Action Manufacturing</u>, <u>supra</u>, and <u>Neopart</u>, <u>supra</u>.

In his Complaint, Plaintiff does not reference any of the <u>Action Manufacturing</u> factors: (1) gross undercapitalization [of the subsidiary]; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of debtor corporation; (5) siphoning of funds from the debtor corporation by the dominant stockholder; (6) nonfunctioning of officers and directors; (7) absence of corporate records; or (8) whether the corporation [the subsidiary] is merely a facade for the operations of the dominant stockholder. Plaintiff's Amended Complaint hints at the final factor, by stating that Lidl Defendants are controlled by Lidl Stiftung and that each entity operates under the larger corporate umbrella (Doc. No. 34 ¶¶ 17-19, 47-48), but he does not go so far as to allege that the subsidiary is "merely a facade."

As to the factors in <u>Neopart</u>, Plaintiff's Amended Complaint does not allege facts relating to the following factors: (2) common officers and directors; (5) common use of employees; (7) interchange of managerial and supervisory personnel; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor[8]; and (10) receipt by officers of the related corporation of instruction from the principal corporation.

Plaintiff does, however, allege facts relating to the following factors: (1) ownership of all or most of the stock of the related corporation; (3) common marketing image; (4) common use of a trademark or logo; (6) integrated sales system; and (8) performance by the related corporation of

---

[8]   Plaintiff does not allege that Lidl Defendants are exclusive distributors, but only that Lidl US, LLC "distributes. . . food supplies."  (Doc. No. 34 ¶ 12.)

business functions which the principal corporation would normally conduct through its own agent or departments.

In support of the first factor, Plaintiff claims that Lidl Stiftung is the "sole and/or major equity member of Lidl US, LLC" and that Lidl US, LLC is the "sole equity member of Lidl US Operations, LLC."  (<u>Id.</u> ¶¶ 17-18.)  Next, in support of factors three and four, Plaintiff references Lidl's LinkedIn page, declaring Lidl to be a "family-owned business," upon which Plaintiff believes this use of the singular unites the companies into one entity.  (<u>Id.</u> ¶ 34.)  Lastly, in support of the sixth, and eighth factors, Plaintiff's Amended Complaint focuses on Lidl Stiftung's: (1) "openly exercising substantially total ownership control over the management and activities of Lidl US, LLC and Lidl US Operations, LLC"; (2) that the Lidl entities are "operating members of the same corporate umbrella strategy created to reduce financial liability by splitting the same entity into multiple jointly controlled and operated companies"; and (3) that Lidl Stiftung uses Lidl Defendants to "control its retail empire."  (<u>Id.</u> ¶¶ 17-19, 31, 38.)

However, there are not enough facts alleged to impute jurisdictional contacts to Lidl Stiftung.  While Plaintiff repeatedly uses the terms "parent, subsidiary, and alter ego" and frequently emphasizes Lidl Stiftung's control over Lidl Defendants, he fails to assert concrete facts and illustrations of Lidl Stiftung's direct management of Lidl Defendants.  Although Plaintiff believes that Lidl Stiftung owns, operates, and controls its American stores, he does not describe the nature or frequency of Lidl Stiftung's involvement.  Lidl Stiftung did create an American corporate headquarters, but that does not mean it controls its American stores or assists in their daily operation.  Rather, Plaintiff merely alleges in a conclusory fashion that Lidl Stiftung "manages and maintains a chain of supermarkets across multiple states of the United States,

including the City of Philadelphia, by using the United States agents Lidl US, LLC; Lidl US Operations, LLC; and Lidl US Management, Inc. to control its retail empire." (Id. ¶ 31.)

Furthermore, while Plaintiff relies on Lidl Stiftung's sole ownership of Lidl Defendants through its ownership of stock, whether partial or total, this allegation is not enough, on its own, to establish jurisdiction. See Action Mfg., 375 F. Supp. 2d at 420; Kehm Oil, 537 F.3d at 301 (citation omitted); Botwinick, 213 A.2d at 353-54. This conclusion is also true for the allegation that the entities share the same, or a similar, name. See Botwinick, 213 A.2d at 353-54. Additionally, as noted in Neopart, a website's projection of unity among entities, an argument Plaintiff makes in his Amended Complaint, is not enough to hail a foreign parent entity into court. Neopart, 314 F. Supp. 3d at 645-46. Even a combination of the above facts has been found to be insufficient to create jurisdiction over the nonresident parent. See Reynolds, 2020 WL 953279, at *4 ("Ms. Reynolds has demonstrated that the Turning Point entities operate as a single brand with common corporate control. That, however, is not enough to overcome the presumption that wholly-owned subsidiaries are separate and distinct from their parent companies.")

Lastly, geographic separation often indicates that a subsidiary is not an alter ego. Action Mfg., 375 F. Supp. 2d at 418, 425. In Action Manufacturing, a parent and a subsidiary shared the same office space, but the strict internal separation between them was, among other factors, sufficient to conclude that the subsidiary was not the alter ego of the parent. Id. Here, Lidl Stiftung mainly operates in Germany, whereas Lidl Defendants maintain their principal places of business in Virginia, making them significantly more geographically distinct from the location of the entities in Action Manufacturing (who shared the same office in Florida).

Therefore, since Plaintiff's Amended Complaint does not sufficiently establish: (1) that the Court has specific jurisdiction over Lidl Stiftung in the traditional manner or (2) that Lidl

Stiftung exerts the level of control over its American stores required to impute jurisdictional contacts to it under the alter ego theory, this Court will not exercise specific jurisdiction over Lidl Stiftung.  Therefore, Lidl Stiftung will be dismissed as a Defendant in this action.

### B.  Motions to Dismiss Certain Counts under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim

As described above, each Defendant moves to dismiss the following counts: breach of express warranty (Count II); breach of implied warranty of fitness for a particular purpose (Count IV); negligence per se (Count VI); negligent infliction of emotional distress ("NIED") (Count VII); fraud and fraudulent misrepresentation (Count VIII); reckless endangerment (Count IX); Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count X); and unjust enrichment (Count XI).  Each Defendant also moves to dismiss the claim for punitive damages.  The Court will address each claim in turn.

#### 1.  Breach of Express Warranty

Count II of Plaintiff's Amended Complaint alleges a breach of an express warranty.  (Doc. No. 34 ¶¶ 113-27.)  The alleged express warranties are: (1) a sticker on the packaging containing the words "New & Improved" and (2) Lidl's website describing its products as "High Quality." (Id. ¶¶ 54, 71, 115, 118.)  Defendants argue that Count II should be dismissed because Plaintiff fails to show that the advertisements were specific enough such that Plaintiff relied upon them in making his purchase.  (Doc. Nos. 41-3 at 6; 70-2 at 6.)  In particular, Defendants assert that the "New & Improved" sticker and the claim of "High Quality" products on Lidl's website do not amount to express warranties because they are mere "puffery."  (Id.)  The H&S Defendants submit an additional argument: the Amended Complaint does not allege that they are "sellers" and for this reason the Pennsylvania express warranty statute does not apply to them.  (Doc. No. 70-2 at 5.)  In opposition, Plaintiff maintains that he has properly asserted his claim and that the language used

is "sufficiently specific and detailed to constitute an express warranty under existing law."  (Doc.

Nos. 52 at 18; 67 at 19; 72 at 10.)  He further argues that he relied on these statements.  (Id.)

An express warranty arises in three circumstances:

**a) General rule.**--Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 Pa. C. S. § 2313(a)(1)-(3).  By contrast, "an affirmation merely of the value of the goods or a

statement purporting to be merely the opinion of the seller or commendation of the goods does not

create a warranty."  Id. § 2313(b).

Here, Plaintiff claims that Defendants were "falsely advertising/warranting" their bread as

"New & Improved."  (Doc. No. 34 ¶ 115.)  To state a claim for breach of express warranty, "a

plaintiff must allege both that the defendant made 'an actual affirmation of fact or a promise,' and

that the affirmation of fact or promise 'formed the basis of the bargain' between the defendant and

the plaintiff."  Webb v. Volvo Cars of N.A., LLC, Civil Action No. 13-2394, 2018 WL 1470470,

at *7 (E.D. Pa. Mar. 26, 2018) (citations omitted).

The Court will first address the element of whether Plaintiff alleged that the Defendants

made an actual affirmation of fact or promise.

The express warranty statute provides that "an affirmation merely of the value of the goods

or a statement purporting to be merely the opinion of the seller or commendation of the goods does

not create a warranty."  13 Pa. C.S. § 2313(b).  This affirmation of value or statement of a seller's

opinion is otherwise known as puffery.  See generally Sabol v. Ford Motor Co., Civil Action No. 14–6654, 2015 WL 4378504, at *4 (E.D. Pa. July 16, 2015).  Puffery is not measurable, but instead is "simply subjective."  Id. (citations omitted).  The Pennsylvania Supreme Court recognizes two forms of puffery.  Commw. by Shapiro v. Golden Gate Nat'l Senior Care, LLC, 194 A.3d 1010, 1023 (Pa. 2018).  The first form "involves hyperbolic boasting or bluster that no reasonable consumers would believe to be true . . . ."  Id. (citation omitted).  The second form "involves claims of superiority over a competitor's product . . . ."  Id. (citations omitted).  Phrased differently, it is "exaggerated advertising, blustering, and boasting" or "vague" and "general claim[s] of superiority."  Painaway Austl. Pty Ltd. CAN 151 146 977 v. MaxRelief USA, Inc., Civil Action No. 18-3854, 2022 WL 1028024, at *4 (E.D. Pa. Apr. 6, 2022) (citations omitted) (discussing puffery in the context of Lanham Act violations).

The general nature of puffery makes it "distinguishable from misdescriptions or false representations of specific characteristics of a product."  Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993) (citing Stiffel Co. v. Westwood Lighting Grp., 658 F. Supp. 1103, 1115 (D. N.J. 1987)) (again discussing puffery in the context of Lanham Act violations).  Typically, the finder of fact determines whether a statement qualifies as puffery, "except in the unusual case where the answer is so clear that it may be decided as a matter of law."  Commw. by Shapiro, 194 A.3d at 1024.  Further, the finder of fact must consider "the overall impression of the statement [particularly as to the expected consumer] and the context in which it is made."  Id. (citations omitted).

Here, "New & Improved" and "High Quality" are examples of puffery.  For example, in Sabol, the court concluded that the words "safe" and "reliable" did not support a claim for breach of express warranty because they were "not measurable . . . [but were] simply subjective opinions

. . . [that] do not give rise to liability for breach of express warranty." Sabol, 2015 WL 4378504, at *4.  Plaintiff's alleged express warranties here — "New & Improved" and "High Quality" — essentially mirror the language rejected in Sabol.  While these terms convey a positive image, they offer no significant measurable value.  Instead, they are more fairly characterized as the "opinion of the seller or commendation of the goods," thereby rendering the claim for breach of an express warranty nonactionable.

Accordingly, Plaintiff is unable to establish the first element of a breach of express warranty claim: that the defendant made an actual affirmation of fact or a promise and therefore the second step of proving this claim, whether the affirmation or promise formed the basis of the bargain, need not be addressed.  As such, this claim will be dismissed against all Defendants.

H&S Defendants make an additional argument that they are not subject to a claim of breach of an express warranty because they are not sellers.  (Doc. No. 70-2 at 5.)  The breach of express warranty statute quoted above requires that the affirmation of fact or promise to the buyer be made by a seller.  A seller is defined in the Pennsylvania statute as "a person who sells or contracts to sell goods."  13 Pa. C.S. § 2103(a).  Whether a manufacturer is a seller is unsettled under Pennsylvania law, but a seller's express warranty is not necessarily assigned to a merchant for liability purposes.  See Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc., 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009).  For example, in Visual Commc'ns, the plaintiff leased copiers from IKON.  Id. at 467.  IKON purchased its copies from Konica, the manufacturer.  Id. at 466.  The copiers were defective, leading the plaintiff to sue Konica for breach of an express warranty.  Id. at 468.  The plaintiff argued that IKON, in its proposal, expressly warranted that "each copier could produce 150 thousand copies per month."  Id. at 469.  Plaintiff argued that this proposal could be attributed to Konica because the proposal was based on information received from

Konica.  Id. at 469 n.6.  The court concluded: "[A]ny express warranty created by IKON's proposal cannot be enforced against Konica because this statement was made by IKON and not Konica. . . . [T]his implies at most that Konica gave IKON an express warranty, not that Visual received one." Id. at 469 & n.6.

 Here, although Plaintiff initially states that "Lidl Defendants with [the] participation of H&S Defendants[,] sold to Mr. Kovalev already contaminated and dangerous bread," he later emphasizes that Lidl independently sold the products.  (Doc. No. 34 ¶ 57; id. ¶ 142.)  Further, Plaintiff does not claim that H&S placed the sticker with the words "New & Improved" on the bread's packaging or that it had control over Lidl's website and marketing materials where he saw the words "High Quality."  Instead, Plaintiff alleges that Lidl Defendants are responsible for the creation of their products and the distribution of those products.  Plaintiff's Amended Complaint states that "[e]ach package of '12 Grain Bread' was manufactured under Lidl's name, was distributed, and sold by Lidl and had Lidl's name printed on each package, including Lidl's address and telephone number."  (Id. ¶ 54.)

Thus, H&S is not a seller for purposes of the breach of warranty statute, 13 Pa. C.S. § 2313, and therefore the statements alleged to be express warranties, "New & Improved" and "High Quality," may not be attributed to it.  And even if the allegations in the Amended Complaint show that H&S was a seller, for the reasons stated above, those two statements themselves are still not express warranties under Pennsylvania law.  Therefore, the breach of warranty claim in Count II will be dismissed.

### 2.  Breach of Implied Warranty of Fitness for a Particular Purpose

Count IV of Plaintiff's Amended Complaint alleges breach of an implied warranty of fitness for a particular purpose.  (Id. ¶¶ 140-48.)  Defendants argue that Count IV of the Amended

Complaint must be dismissed because the bread was purchased for human consumption, which constitutes an "ordinary purpose," as opposed to a particular purpose.  (Doc. Nos. 41-3 at 8; 70-2 at 8.)  Plaintiff responds by asserting that consumption is not an ordinary purpose, but instead a particular purpose.  (Doc. Nos. 52 at 23; 67 at 24; 72 at 14.)

Under Pennsylvania law, an implied warranty of fitness for a particular purpose is established: "where the seller at the time of contracting has reason to know: (1) [of] any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods."  13 Pa. C.S. § 2315.  Under this statute, one "need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists."  Id. at cmt. n. 1. Further, a plaintiff must prove that the product at issue was "defective."  Incubadora Mexicana, SA de CV v. Zoetis, Inc., 310 F.R.D. 166, 175 (E.D. Pa. 2015).

A particular purpose is different than an ordinary purpose.  Williams v. Amazon, Inc., 573 F. Supp. 3d 971, 976 (E.D. Pa. 2021) (see Gall by Gall v. Allegheny Cnty. Health Dep't., 555 A.2d 786, 790 (Pa. 1989); Visual Commc'ns, Inc., 611 F. Supp. 2d at 471).  A particular purpose is one that is "peculiar to the nature of his business" and "is based upon a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer."  Gall, 555 A.2d at 790 (citation omitted).  An ordinary purpose is one that is "customarily made of the goods in question," and is the subject of a claim for a breach of an implied warranty of merchantability, not fitness for a particular purpose.  Id.; Williams, 573 F. Supp. 3d at 976 (citation omitted).  As helpfully illustrated in the comments to section 2315, "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair

was selected to be used for climbing mountains." 13 Pa. C.S. § 2315, cmt. n. 2. The latter would be covered by an implied warranty of fitness for a particular purpose.

The first step in establishing such a warranty is proving that a seller was aware of a customer's particular purpose. This step has two elements: (1) a seller's awareness and (2) that the usage was for a particular purpose, not an ordinary purpose. Here, Plaintiff meets this first element, which is quite obvious. He purchased the bread to consume it. (See Doc. No. 34 ¶¶ 60-70.) Lidl was aware of this purpose. Construing Plaintiff's Amended Complaint liberally, a retailer of food products, like Lidl Defendants, would be aware that customers buying a bread product would do so for the purpose of consumption.

The second element of establishing a warranty of fitness for a particular purpose requires a plaintiff to show that his or her intended usage was for a particular purpose. Plaintiff fails to plead sufficient facts to prove that consumption of bread is for a particular purpose as this term is used in the cause of action. A particular purpose is specialized rather than typical. See Gall, 555 A.2d at 790. In Gall, for example, the plaintiffs alleged that their local health department failed to provide safe drinking water. Id. at 787. After suffering from various illnesses upon consuming the water, the plaintiffs sued the health department for breach of the implied warranty of fitness for a particular purpose. Id. The court explained that "[t]he sale of water for drinking and household use does not carry with it the implied warranty of fitness for a particular purpose." Id.

Here, Plaintiff alleges that Defendants breached this implied warranty because the "dangerous and contaminated bread was not suitable for human consumption." (Doc. No. 34 ¶ 144.) But Plaintiff does not allege that there is another purpose for bread beyond its ordinary purpose of consumption. As in Gall, in which the court noted that the consumption of water and

27

its related uses did not qualify as a particular purpose, so too is Plaintiff's allegation about the consumption of bread insufficient to establish that he purchased the bread with a unique intention.

Because Plaintiff fails to meet this second element, the Court need not analyze whether there was reliance or whether the product was defective. Accordingly, Count IV of the Amended Complaint will be dismissed.

### 3. Negligence Per Se

Count VI of Plaintiff's Amended Complaint alleges a claim of negligence per se. (Doc. 34 ¶¶ 160-69.)

Defendants argue that Plaintiff improperly asserts this claim. (Doc. Nos. 41-3 at 8-9; 70-2 at 8-9.) First, Defendants submit that negligence per se is not an independent action under Pennsylvania law. (Doc. Nos. 41-3 at 8-9; 70-2 at 8-9.) Second, they argue that while negligence per se, which involves a violation of a statute or regulation, is a recognized theory, the statute at issue must "secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public." (Doc. No. 41-3 at 9.)

Plaintiff asserts to the contrary that he has pled a claim for negligence per se. (Doc. Nos. 52 at 27; 67 at 28; 72 at 18.) He further states that negligence per se is an independent action. (Doc. Nos. 52 at 28-30; 67 at 29-31; 72 at 19-21.) Plaintiff contends "Defendants breached all applicable the [sic] State of Pennsylvania laws and regulations by selling Lidl's dangerous and defective bread product when it sold to Plaintiff contaminated and poisonous bread products that were too dangerous for human consumption." (Doc. No. 34 ¶ 167.) Specifically, Plaintiff alleges that the following statutes serve as the foundation for his negligence per se claim:

> [1] 13 Pa.C.S. § 2313 (Express warranties by affirmation, promise, description or sample), [2] 13 Pa.C.S. § 2314 (Implied Warranty: merchantability), [3] 13 Pa.C.S. § 2315 (Implied Warranty: fitness for particular purpose), [4] 18 Pa.C.S. § 2705

(prohibition of reckless endangerment), [5] laws prohibiting fraud and fraudulent misrepresentation, and . . . [6] 73 P.S. § 201-1, et seq. (UTPCPL).

Id. ¶ 166.

Under Pennsylvania law, negligence per se is not a free-standing tort.  In re Rutter's Inc. Data Sec. Breach Litig., 511 F. Supp. 3d 514, 531 (M.D. Pa. 2021).  If a plaintiff alleges negligence and negligence per se separately, "courts within the Third Circuit routinely dismiss the negligence per se claim as subsumed within the standard negligence claim."  Id. (citations omitted); Sipp-Lipscomb v. Einstein Phys. Pennypack Pediatrics, Civil Action No. 20-1926, 2020 WL 7353105, at *3 (E.D. Pa. Dec. 9, 2020).  In the present matter, Plaintiff's negligence claim (Count V) is uncontested.  Therefore, the negligence per se claim in Count VI will be dismissed.[9]

### 4.   Negligent Infliction of Emotional Distress

Plaintiff alleges a claim of negligent infliction of emotional distress ("NIED") in Count VII of his Amended Complaint.  (Doc. No. 34 ¶¶ 170-75.)  Defendants submit that Plaintiff fails to set forth sufficient facts to meet the requirements of a NIED claim.  (Doc. Nos. 41-3 at 10-11; 70-2 at 9-11.)  Plaintiff contends that his Amended Complaint contains enough facts to support the four theories under which a NIED claim may arise.  (Doc. Nos. 52 at 32; 67 at 34; 72 at 24.)

---

[9]   Negligence per se is "a theory of liability that supports a negligence claim."  In re Rutter's, 511 F. Supp. 3d at 531 (quoting Simmons v. Simpson House, Inc., 224 F. Supp. 3d 406, 417 (E.D. Pa. 2016).  Specifically, negligence per se acts as a substitute for the "elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm."  In re Rutter's, 511 F. Supp. 3d at 531 (citing Schemberg v. Smicherko, 85 A.3d 1071, 1074 (Pa. Super. Ct. 2014).  In short, negligence per se "establishes . . . the standard of care appropriate to the underlying tort."  In re Rutter's, 511 F. Supp. 3d at 531 (citations omitted).  If a plaintiff successfully demonstrates that an applicable statute has been violated, he or she has established duty and breach, and is only required to then establish the remaining elements of a negligence claim, i.e. causation and damages.  See Thorne v. Pep Boys Manny Moe & Jack Inc., 980 F.3d 879, 890 (3d Cir. 2020) ("negligence per se [does not] obviate the need to show proximate causation or damages") (emphasis added) (citation omitted).

Under Pennsylvania law, a plaintiff may only prevail on a claim of negligent infliction of emotional distress if he plausibly pleads any of the following situations: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."  Runner v. C.R. Bard, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015).

After successfully demonstrating one of the above factual scenarios, a plaintiff must next establish two additional factors: (1) an emotional disturbance and (2) a physical harm.  Id. at 273. (citing Restatement (Second) of Torts, Section 436A, comment c)); Drumheller v. Johnson & Johnson, Civil Action No. 20-6535, 2021 WL 1853407, at *16 (E.D. Pa. May 10, 2021) (citations omitted); Bernstein v. Serv. Corp. Int'l, Civil Action No. 17-4960, 2018 WL 6413316, at *5 (E.D. Pa. Dec. 6, 2018) ("To recover damages for emotional distress under a negligence theory, a plaintiff must have experienced physical injury. . . .  Pennsylvania courts have consistently required plaintiffs to allege physical manifestations of their emotional suffering.") (citations omitted).  The alleged emotional disturbance must reach a certain level of severity.  See Runner, 108 F. Supp. 3d at 273 ("A plaintiff must allege some emotional disturbance beyond 'transitory, nonrecurring physical phenomena, harmless in themselves' and tantamount to physical harm that 'may be classified by the courts as illness, notwithstanding their mental character.'") (emphasis in original) (citations omitted).

Here, Plaintiff argues that he was subjected to negligent infliction of emotional distress under all four theories noted above.  The Court will address each in turn and then discuss whether he has sufficiently alleged facts to show that he suffered an emotional disturbance and physical harm.

i.     Contractual or Fiduciary Duty

As noted above, the first method of proving a NIED claim is showing that the defendant had a contractual or fiduciary duty toward the plaintiff.  The requisite contractual or fiduciary duty need not extend to all possible relationships that a plaintiff may have with a defendant.  Instead, under Pennsylvania law, the relevant "special" relationship occurs "where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting stress." Bernstein, 2018 WL 6413316, at *5 (citing Toney v. Chester Cnty. Hosp., 36 A.3d 83, 84 (Pa. 2011)).  In other words, the contractual or fiduciary duty involves "an implied duty to care for the plaintiff's emotional wellbeing," a type of duty commonly associated with doctors or funeral directors.  Runner, 108 F. Supp. 3d at 272 (citing Toney, 36 A.3d at 92, 95).

In Runner, a plaintiff suffered injuries from a surgical implant.  108 F. Supp. 3d at 264.  Using the first theory for proving a negligent infliction of emotional distress claim, he sued two corporations responsible for manufacturing the implant.  Id. at 264, 272.  In Runner, the court held:

> The Pennsylvania Supreme Court expanded NIED claims to encompass 'preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach.'  As that Court further explained, the 'special relationship' giving rise to such a potential claim 'must encompass an implied duty to care for the plaintiff's emotional wellbeing.'  Such a relationship exists between a doctor and patient or between a deceased's loved ones and those caring for the corpse.  Here, where Runner filed his putative claim against two corporations, no such special relationship can arise.

Id. at 272 (citations omitted).

Here, Plaintiff asserts that Lidl had a contractual or fiduciary duty towards him.  A grocer does not have the kind of "special relationship" with consumers "where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting stress." Bernstein, 2018 WL 6413316, at *5 (citing

31

Toney, 36 A.3d at 84).  A plaintiff cannot form a special relationship with a corporation that merely produces or sells a product.  Runner, 108 F. Supp. 3d at 272; see also Rideout v. Wells Fargo Bank N.A., Civil Action No. 21-3326, 2021 WL 4902344, at *12 (E.D. Pa. Oct. 21, 2021) (explaining that courts have also rejected the following relationships as those which might invoke a negligent infliction of emotional distress claim: employer-employee, lender-borrower, casino-patron, and contractor-owner) (citation omitted).  In the present matter, Plaintiff was a consumer of bread; his relationship with Lidl Defendants, H&S Defendants, and Lidl Stiftung is not that between patient and doctor, nor is it the type of relationship commonly fraught with emotion.

     ii.    Physical Impact

The next method of establishing negligent infliction of emotional distress is proving that one suffered a physical impact.  Under this theory, the requisite "physical impact may be minor." Russell v. Educ. Comm'n for Foreign Med. Graduates, Case No. 2:18-cv-05629-JDW, 2022 WL 1592444, at *4 (E.D. Pa. May 19, 2022) (citations omitted); Plummer v. United States, 580 F.2d 72, 76 (3d Cir. 1978).  In Plummer, a case in which plaintiffs were exposed to a fellow inmate with tuberculosis, the court stated:

> [T]he "impact" of a tubercle bacillus does not entail the palpable physical shock of a highway collision.  But Pennsylvania cases have not required forceful physical contact to meet the strictures of the "impact" test.  The office [sic] of the impact rule is to guard against feigned claims by requiring physical evidence to substantiate the alleged impingement of the defendant's negligence on the psyche of the plaintiff, and by assuring that the danger perceived by the plaintiff was not imaginary. . . . The impingement of the tubercle bacilli on the prisoners' lungs renders their resultant fear of having contracted active tuberculosis, or of transmitting it to others in the future, compensable mental suffering.

580 F.2d at 76-77 (citations omitted).  Further, the emotional disturbance "must be contemporaneous with the event that causes it."  Russell, 2022 WL 1592444, at *4 (citation omitted).  And finally, merely alleging generic claims of injury are insufficient.  See Runner, 108

F. Supp. 3d at 273 ("Runner has failed to allege any emotional disturbance beyond the bald assertion that he 'suffered injuries.'  He has thus failed to plead an essential element of a NIED claim.")

In Toney, the court found that the plaintiff, a new mother, sufficiently demonstrated the physical harm element of a NIED claim because she complained of "nausea, headaches, insomnia, depression, nightmares, flashbacks, repeated hysterical attacks, stress, and anxiety."  Toney, 36 A.2d at 85, 100.  Further, the harm need not be as drastic as that in Toney.  See Drumheller, 2021 WL 1853407, at *17 (finding that allegations of "sustained physical injuries … that were caused by psychological trauma (stress, anxiety, sadness, anger[,] etc.) . . . and were "medically diagnosable" was "sufficient at this stage [a motion to dismiss] to state a claim for negligent infliction of emotional distress").

Under the law described above, Plaintiff's factual allegations are sufficient to state a claim for NIED.

As a general matter, in the Amended Complaint, Plaintiff states that he "suffered a physical impact."  (Doc. No. 34 ¶ 172.)  The first physical impact occurred when Plaintiff ingested the allegedly moldy bread and subsequently became ill.  (Id. ¶¶ 60-61.)  The second physical impact was the consumption of the bread which allegedly contained rodent/rat excrement.  (Id. ¶¶ 70-71.)

Plaintiff alleges emotional harm and suffering, such as "mental anguish and emotional distress," feeling "terrified" and "in extreme fear for his life, safety, and well-being," being "unable to sleep" and "struggling to overcome the aforementioned injuries."  (Id. ¶¶ 73-76.)  Plaintiff also expresses that his trauma arose from not being able to determine whether he had consumed the "foreign substance" in the loaf of bread from his second purchase.  (Id. ¶ 72.)  Therefore, Plaintiff

pleads plausible facts to prove ongoing emotional harm and physical manifestations of that harm arising from the initial physical impact of consuming the bread.

Finally, Plaintiff must prove that his emotional disturbance occurred simultaneously with the physical impact.  Plaintiff satisfies this requirement because he alleges that after consuming the Enriched White Bread, the second purchase, that he suffered "immediate mental anguish and extreme emotional distress."  (Id. ¶ 73.)

Accordingly, again viewing the facts alleged in the Amended Complaint in the light most favorable to Plaintiff, he has set forth plausible facts and inferences under the physical impact theory to support a claim of negligent infliction of emotional distress.

iii.    Zone of Danger

The third means of establishing a negligent infliction of emotional distress claim requires that the party be in the zone of danger.  In Pennsylvania, "[u]nder the zone of danger theory, a plaintiff may recover if she (1) was in personal danger of physical impact because of the direction of a negligent force against her and (2) actually feared the physical impact."  Russell, 2022 WL 1592444, at *6 (citation omitted).

Here, Plaintiff is unable to establish that he feared a physical impact.  Plaintiff's Amended Complaint states that he "had no knowledge that the bread . . . was contaminated with toxic fungus" and that he willingly consumed the bread "without knowledge of [its] dangerous contamination." (Doc. No. 34 ¶¶ 58, 60.)  Further, he alleges that he "was unable to figure out if he already consumed" the foreign object from the second purchase of bread.  (Id. ¶ 72.)  Therefore, his facts do not sustain the charge that he feared a physical impact.

34

      iv.    <u>Bystander (Witnessing a Tortious Act Conducted Against a Close Relative)</u>

The final theory to establishing a NIED claim is showing that one observed the injury of a close relative.  Pennsylvania only recognizes bystander cases when one witnesses a close relative being injured.  <u>See</u> <u>Caserta v. GEICO Gen. Ins.</u>, 507 F. App'x 104, 106 (3d Cir. 2012) ("[t]o establish a bystander claim for emotional injury under Pennsylvania law, a plaintiff must prove that . . . she was closely related to the victim of the accident") (citations omitted).  A close relative does not include oneself.  <u>See</u> <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S. 532, 549 (referencing that the bystander theory of recovery is for cases of "emotional distress brought on by witnessing the injury or death of a <u>third party</u> (who typically must be a close relative of the bystander)") (emphasis added) (citations omitted).  Therefore, Plaintiff does not meet the fourth factor, as he only is a witness to his own injury.

Construing the Amended Complaint liberally and taking all the facts alleged as true, the Court will not dismiss Count VII of Plaintiff's Amended Complaint and instead allow this claim to proceed only under the physical impact theory.

     **5.  Fraud and Fraudulent Misrepresentation**

Plaintiff asserts a fraud and fraudulent misrepresentation claim in Count VIII of his Amended Complaint.  (Doc. No. 34 ¶¶ 176-87.)  He alleges that Defendants committed fraud by packaging a defective product with a label that read "New & Improved" and describing their products on their website as "High Quality."  (<u>Id.</u> ¶¶ 177, 180-81.)  Defendants argue to the contrary that the words in question are not a representation and that Plaintiff "failed to allege 'with particularity' that the 'new and improved' [statement] was material to the transaction, that the label was false, how it mislead [sic] Plaintiff, or how Plaintiff was justified in relying on the label." (Doc. Nos. 41-3 at 12-13; 70-2 at 12.)  Additionally, Defendants assert that Plaintiff did not rely

on Lidl's website, because he viewed it only after consuming the bread.  (Doc. Nos. 41-3 at 13; 70-2 at 12.)  Plaintiff argues in his Responses that he meets all six of the elements required to prove a fraud/fraudulent misrepresentation claim.  (Doc. Nos. 52 at 39; 67 at 41-42; 72 at 30-31.)

Under Pennsylvania law, to prevail on a fraudulent misrepresentation claim, one must meet six elements.  Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771.  They are:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Id. (citations omitted).  The elements of fraud are identical, except for a slight modification to the first element, which is typically phrased as a "misrepresentation."  See SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 205 (3d Cir. 2022) (citations omitted).

Viewing the plausible allegations in the Amended Complaint as true, Plaintiff fails to allege sufficient facts in support of the first factor, and therefore the remaining five factors need not be addressed.

First, a plaintiff must establish that there was a representation.  A representation is "a presentation of fact – either by words or by conduct – made to induce someone to act. . . ."  Black's Law Dictionary (11th ed. 2019).  A representation also has been described as a promise.  See Overall v. Univ. of Pa., 412 F.3d 492, 499 (3d Cir. 2005).  A misrepresentation is defined as: "the act or an instance of making a false or misleading assertion about something, usu[ally] with the intent to deceive. . . ." or "the assertion so made; an incorrect, unfair, or false statement; an assertion that does not accord with the facts."  Black's Law Dictionary (11th ed. 2019).

In this regard, Plaintiff refers to the "New & Improved" sticker on the bread's packaging and the "High Quality" statement on Lidl's website.  (Doc. No. 34 ¶¶ 54, 71, 115, 118.)  However,

"[f]raud requires a statement that can be proved false [so one] must allege a statement specific enough to be falsifiable . . . . By contrast, there is no way to prove that a product is not 'good,' 'dependable,' or, in the abstract, 'safe.'"  Fusco v. Uber Techs., Inc., Civil Action No. 17-00036, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018).

In Fusco, the plaintiff asserted claims of fraud, negligent misrepresentation, and violations of the UTPCPL against Uber, asserting that its services failed to meet its promises of a "safe" and "reliable" service as well as conducting "thorough," "rigorous," and "robust" background checks. Id. at *3, *7.  The defendant argued that such terms were nonactionable puffery.  Id. at *3.  The court explained that a statement referring to quality [puffery] may "constitute an actionable misrepresentation if the statements is phrased in absolute terms" or if the statement "compares a general quality . . . between two products [and that] quality is measurable."  Id. at *6.  The court then noted that "[b]y contrast, bare assertions of quality cannot be falsified in this way: even if the characteristic could be quantified, there is no standard against which to evaluate it."  Id. at *7.  In Fusco, the court held that the plaintiff's allegations included terms that were "general terms of quality, not specific characteristics" and therefore were "not falsifiable."  Id.  Accordingly, the Court concluded that the plaintiff failed to allege sufficient facts to establish fraud, negligent misrepresentation, and a violation of the UTPCPL because the terms did not "allege[] a false or misleading statement or omission of fact. . . .[which] is a prerequisite [for these claims].  Id. at *8-9.

In this matter, Plaintiff's allegations include two phrases: "New & Improved" and "High Quality."  (Doc. No. 34 ¶¶ 54, 71, 115, 118.)  These terms are puffery.  These phrases were not made in absolute terms, nor were they made in comparison to other products that may be

measurable or quantified, and therefore Plaintiff is unable to establish that they were misrepresentations.

Consequently, the Motion to Dismiss Count VIII will be granted.

### 6. Reckless Endangerment

Count IX alleges a Reckless Endangerment civil claim.  (Id. ¶¶ 188-98.)  It is based, however, on a Pennsylvania criminal statute, 18 Pa. C. S. § 2705, which makes reckless endangerment an offense.  (Id. ¶ 191.)  The statute reads: "[a] person who commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa. C. S. § 2705.

Defendants assert that there is no civil remedy recognized in Pennsylvania for the crime of reckless endangerment.  (Doc. Nos. 41-3 at 13; 70-2 at 13.)  They are correct.  To overcome this legal impediment, Plaintiff argues that he is "not asserting a private statutory cause of action under [a] criminal statute . . . [but instead is alleging that Defendants] breached the standard of care as prescribed by criminal statute or by any other statute or law, which conveys an actionable tort duty . . . [and that he is] presenting only a civil tort claim."  (Doc. Nos. 52 at 42; 67 at 44; 72 at 34.)

In Pennsylvania, "[t]here is no private cause of action for violation of a state criminal statute."  Petaccio v. Davis, No. Civ.A. 02-2098, 2002 WL 32356393, at *4 (E.D. Pa. Oct. 9, 2002); see also Muhammad v. City of Lewisburg, PA, Civil No. 4:21-CV-0284, 2022 WL 774880, at *6 (M.D. Pa. Jan. 20, 2022).  As a result, the reckless endangerment claim is not a claim upon which relief can be granted.  Moreover, Plaintiff has not identified "any other statute or law" he is relying on.  Accordingly, this Court will dismiss Count IX of Plaintiff's Amended Complaint.

### 7.   Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law

In Count X, Plaintiff alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, et. seq.  (Doc. No. 34 ¶¶ 199-211.)  Defendants assert that Plaintiff fails to identify and plead a specific provision of the UTPCPL that was violated.  (Doc. Nos. 41-3 at 14; 70-2 at 14.)  Additionally, Defendants argue that Plaintiff "fails to allege any facts supporting his claim that the unidentified provisions were violated . . . [or evidence of] an unfair or deceptive practice."  (Doc. Nos. 41-3 at 15; 70-2 at 15.)  Plaintiff counters that the Amended Complaint provides sufficient plausible facts upon which he may recover under the UTPCPL.  (Doc. Nos. 52 at 47-48; 67 at 49-52; 72 at 38-42.)  He notes that the UTPCPL "prohibits 'unfair or deceptive acts or practices' including any one or more of the following: [1] 'Using deceptive representations . . . in connection with goods or services'; [2] 'Representing that goods or services have … characteristics, … uses, benefits … that they do not have…'; and [3] 'Representing that goods or services are of a particular standard … if they are of another.'"  (Doc. Nos. 34 ¶ 202; 52 at 47; 67 at 49; 72 at 38.)

To recover under the UTPCPL, one "must show that he: 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL."  Mazur v. Milo's Kitchen, LLC, Civil Action No. 12-1011, 2013 WL 3245203, *7 (E.D. Pa. June 25, 2013) (citing 73 Pa. Stat. Ann. § 201-9.2(a)).  The UTPCPL declares unlawful several "unfair methods of competition" and "unfair or deceptive acts or practices."  73 Pa. Stat. Ann. § 201-2(4).  Under the UTPCPL, one may "state a cause of action . . . by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct."  Simmons, 224 F. Supp. 3d at 420 (citations omitted).  A deceptive

activity is defined as "the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013) (citation omitted). Under the "catch-all" provision of the UTPCPL, 73 Pa. Stat. Ann. § 201-2(xxi), which covers "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," the court is to view the claim "without regard to the actor's intent to deceive or actual deception." Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 645 (Pa. 2021) (citing Commw. by Shapiro, 194 A.3d at 1023).

Furthermore, "'a private plaintiff pursuing a claim under the statute [the UTPCPL] must prove justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries." Hope v. Fair Acres Geriatric Ctr., 174 F. Supp. 3d 880, 893 (E.D. Pa. 2016) (citation omitted). A plaintiff must then "show that she 'suffered harm as a result of that reliance.'" Id. (citation omitted).

The first element of a UTPCPL claim is establishing that one purchased the item at issue for a personal, family, or household use. Plaintiff pleads facts in support of this element, by stating that he purchased the loaves of bread for his personal consumption. (See Doc. No. 34 ¶¶ 60, 70.)

The second element requires a plaintiff to show an ascertainable loss of money or property. Plaintiff also alleges sufficient facts in support of this element. In the Amended Complaint, Plaintiff states that he paid for the loaves of bread. (Id. ¶¶ 53, 69.)

Third, one must prove that the loss occurred as a result of an action declared unlawful by the UTPCPL. At this stage of the litigation, Plaintiff does not offer plausible facts in support of the unlawful conduct element. While Plaintiff claims that Defendants engaged in "deceptive activities," (id. ¶ 88), one who claims a violation of the UTPCPL, however, must overcome the

hurdle of puffery.  See Commnw. by Shapiro, 194 A.3d 1010, 1023-24 (Pa. 2018).   If the words used are mere puffery, they cannot be construed as deceptive.  Id. at 1023 ("Where the impression created by the [advertising] statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery.")  "New & Improved" and "High Quality" have already been found to be puffery, supra, and for this reason they are nonactionable under the UTPCPL.  Furthermore, this finding of puffery negates the reliance element.  See id. at 1024 (describing puffery's nature as "dissuad[ing] any reasonable consumer from placing reliance thereon as fact – render[ing] puffery non-actionable under the UTPCPL").

Thus, Count X of the Amended Complaint will be dismissed.

### 8.  Unjust Enrichment

Count XI of Plaintiff's Amended Complaint alleges a claim of unjust enrichment.  (Doc. No. 34 ¶¶ 212-217.)  Plaintiff asserts that "[b]y paying money to purchase Defendants' defective and dangerous product, Plaintiff and other purchasers conferred a financial benefit on Defendants, and Defendants had knowledge of this benefit."  (Id. ¶ 213.)  Defendants argue that Plaintiff merely alleges the elements of an unjust enrichment claim without providing concrete facts and that his payment of roughly $12 "does not justify a claim for unjust enrichment."  (Doc. Nos. 41-3 at 16-17; 70-2 at 16.)  Plaintiff states that he has proven the requisite elements and that it is too soon in the litigation to dismiss this claim.  (Doc. Nos. 52 at 49-51; 67 at 54-56; 72 at 43-45.)

For a plaintiff to prevail on a claim of unjust enrichment, he or she "must allege that (1) he [or she] conferred a benefit on the defendant, (2) the defendant knew of the benefit and accepted or retained it, and (3) it would be inequitable to allow the defendant to keep the benefit without paying for it."  Bostic v. Ethicon, Inc., Civil Action No. 20-6533, 2022 WL 952129, at *15 (E.D. Pa. Mar. 29, 2022) (citations omitted).

"Unjust enrichment claims under Pennsylvania law appear to fall into one of two categories." Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016).  First, an unjust enrichment claim may be brought "as an alternative to a breach of contract claim." Id. (citations omitted).  Second, an unjust enrichment claim that is based on the same improper conduct as a separate claim will be considered "a companion to the underlying claim." Id. (citations omitted); id. at 493 ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.").

In the products liability context, "courts in this Circuit applying Pennsylvania law dismiss unjust enrichment claims where the plaintiff received and used the product at issue." Bostic, 2022 WL 952129, at *16 (citations omitted).  While the court in Whitaker stated that "no such categorical bar exists," 198 F. Supp. 3d at 492, others have continued to dismiss unjust enrichment claims on such grounds.  See Goodling v. Johnson & Johnson, No. 4:21-CV-00082, 2022 WL 414285, at *14 (M.D. Pa. Feb. 10, 2022) (stating that Plaintiffs did "not allege that Ms. Goodling paid for but never received the product at issue; rather, they allege her dissatisfaction with the product.  That is insufficient to sustain a claim for unjust enrichment."); Mazur, 2013 WL 3245203, at *10 ("[W]hile she [Plaintiff] is dissatisfied with the chicken jerky treats, she nevertheless purchased, received, and used the product.  It therefore cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was 'wrongly secured.'")

Here, Plaintiff paid for, and received, the loaves of bread.  (Doc. No. 34 ¶¶ 53, 69.)  He then consumed portions of the loaves of bread.  (Id. ¶¶ 60, 70.)  Accordingly, Count XI will be dismissed.

### 9. Punitive Damages

In his Prayer for Relief, Plaintiff requests punitive damages in the amount of $1,000,000. (Id. at 43 § d.)  Plaintiff asserts that punitive damages are appropriate because Defendants' conduct was "outrageous because of Defendant's [sic] wantonness and reckless indifference to the rights of Mr. Kovalev . . . ." (Id. ¶ 82.)  Paragraphs 83 to 94 of the Amended Complaint further support Plaintiff's belief that punitive damages are necessary and warranted.  (Id. ¶¶ 83-94.)  Defendants argue that Plaintiff's inability to establish "that Lidl sold [or that H&S manufactured] the bread with knowledge of the mold or with reckless indifference to the safety of its customers" bars Plaintiff's demand for punitive damages.  (Doc. Nos. 41-3 at 18; 70-2 at 18.)   In Plaintiff's Responses, he maintains that Defendants "engaged in outrageous conduct" and that the "possibility of punitive damages cannot be excluded at the [sic] stage of litigation.  (Doc. Nos. 52 at 55-56; 67 at 60; 72 at 49-50.)

Punitive damages are an "extreme remedy" appropriate for only the "most exceptional matters." In re Lemington Home for the Aged, 777 F.3d 620, 633 (3d Cir. 2015) (citation omitted). The standard in Pennsylvania for awarding punitive damages is well settled and "the fact-finder must determine that the defendant acted with a culpable state of mind, i.e., with evil motive or reckless indifference to the rights of others." Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc., 801 F.3d 347, 360 (3d Cir. 2015) (emphasis in original) (citation omitted).  Under Pennsylvania law, to establish reckless indifference, a plaintiff must present "evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id. (citation omitted).

It is usually up to the finder of fact to decide whether Defendants' conduct was so reckless or outrageous as to warrant an award for punitive damages.  See Sipp-Lipscomb, 2022 WL 3139852, at *4.  In this case, there are three uncontested claims: (1) strict liability; (2) breach of the implied warranty of merchantability; and (3) negligence.  Further, the Court is permitting the following claim to proceed: negligent infliction of emotional distress.

Pennsylvania law permits a plaintiff to assert a claim for punitive damages in connection with strict liability actions.  See Thorpe v. Bollinger Sports, LLC, Civil Action No. 14–04520, 2015 WL 3400919, at *2 (E.D. Pa. May 27, 2015) ("[I]n products liability cases grounded in a theory of strict liability, it appears that a plaintiff may seek punitive as well as compensatory damages, although [the Pennsylvania] Supreme Court has not definitively so held") (citing Hutchinson v. Penske Truck Leasing Co., 876 A.2d 978, 983 (Pa. Super. Ct. 2005) (alteration in original).  The law is unclear as to whether punitive damages may be awarded in cases of breach of implied warranty of merchantability.  The parties may provide case law on this point.  As to negligence, "a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed."  Shipman v. Aquatherm L.P., Civil Action No. 17-5416, 2020 WL 1984903, at *6 (E.D. Pa. Apr. 27, 2020) (citations omitted).  Regarding negligent infliction of emotional distress, it appears that punitive damages may be awarded on such a claim. See Cerreta v. Red Roof Inns, Inc., Case No. 4:16-cv-0706, 2016 WL 4611689, at *3 (M.D. Pa. Sept. 6, 2016) ("Although ordinary negligence will not support an award of punitive damages, [they] 'are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard . . . .'") (citations omitted).

Accordingly, at the very least, the punitive damages claim will not be dismissed on the following claims: strict liability and negligent infliction of emotional distress.   The Court, however, may not allow the jury to decide if punitive damages are warranted if the evidence does not support it.

### C.  Motions to Strike Allegations from the Complaint

Defendants request that the Court strike "repetitive, unsubstantiated, hyperbolic assertions of 'outrageous,' 'wanton conduct'; 'reckless behavior'; 'flagrant,' 'intentional conduct accompanied with reckless indifference' from the Amended Complaint.  (Doc. Nos. 41-3 at 18-19; 70-2 at 18-19.)  Plaintiff argues that the use of these phrases is essential to his claims, and that they are "material, appropriate, and necessary" to establishing the claims.  (Doc. Nos. 52 at 57; 67 at 62; 72 at 51.)

A motion to strike is a "drastic remedy" and is "resorted to only when required for the purposes of justice." Giuliani v. Polysciences, Inc., 275 F. Supp. 3d 564, 572 (E.D. Pa. 2017) (citation omitted).  Accordingly, while courts may exercise their judicial discretion to dispose of a motion to strike, such a motion is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." Id. (citation omitted).

In the present matter, Plaintiff uses the contested words not only to argue his legal claims, but also to plead them with specificity.  For example, Pennsylvania law permits the terms "outrageous" and "reckless indifference" to support an award of punitive damages.  While Plaintiff uses strong language in other sections of his Amended Complaint, Defendants have failed to demonstrate how these terms would prejudice the proceedings in this case.

Consequently, Defendants' Motions to Strike certain allegations from the Amended Complaint will be denied.

## V.      CONCLUSION

For the foregoing reasons, Lidl Stiftung's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) will be granted and therefore it is no longer a Defendant in this case.  With respect to Lidl Defendants and H&S Defendants, the following claims remain: strict liability (Count I); breach of implied warranty of merchantability (Count III); negligence (Count V); and negligent infliction of emotional distress (Count VII).  The claim for punitive damages also remains.  All other claims in Counts II, IV VI, VIII, IX, X, and XI will be dismissed.

The Court will deny Lidl Defendants' and the H&S Defendants' Motions to Strike.  An appropriate Order follows.[10]

---

[10]   In the Amended Complaint, Plaintiff added Defendants Lidl US Operations, LLC, Lidl Stiftung, and H&S Defendants.  (Doc. No. 34.)  Further, Plaintiff added claims of breach of express warranty and unjust enrichment.  (Id.)  In his Responses, Plaintiff requests leave generally to amend should the Court find it warranted.  (See Doc. Nos. 52, 67, and 72.)  For the reasons stated in this Opinion, however, it would be futile to allow Plaintiff to file a Second Amended Complaint after formerly granting him leave to file an Amended Complaint.

The claims being dismissed in this case are: (1) breach of express warranty; (2) breach of the implied warranty of fitness for a particular purpose; (3) negligence per se; (4) fraud and fraudulent misrepresentation; (5) reckless endangerment; (6) violation of the Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"); and (7) unjust enrichment.

To begin, many of Plaintiff's claims are based on the words "New & Improved" and "High Quality."  Because these words are mere puffery, their very nature disposes of the following claims: (1) breach of express warranty; (2) fraud and fraudulent misrepresentation; and (3) violation of the UTPCPL.  These were the express words employed by Defendants; an amendment would not change the outcome.

Next, amendments to the negligence per se claim and the reckless endangerment claim would still not allow Plaintiff's claims to proceed: negligence per se is subsumed under a negligence claim and reckless endangerment is not recognized as a civil cause of action in Pennsylvania.

Further, an amendment as to the breach of the implied warranty of fitness for a particular purpose cause of action would not enable Plaintiff's claim to stand.  The whole basis of Plaintiff's lawsuit is the consumption of bread, and this consumption is an ordinary purpose.

Lastly, the unjust enrichment claim would not stand even with an amendment, as courts often dismiss such claims made in the products liability context so long as a plaintiff paid for, received, and used the product.  Here, Plaintiff purchased, received, and consumed Defendants' bread.

Consequently, given the futility of amendment, the request to do so will be denied.