IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SERGEI KOVALEV,

                    Plaintiff,

        v.                                                  CIVIL ACTION
                                                            NO. 21-3300
LIDL US, LLC, et al.,

                    Defendants.

**OPINION**

**Slomsky, J.**                                             **October 31, 2024**

**TABLE OF CONTENTS**

I.    **INTRODUCTION**.................................................................................................. 3

II.   **BACKGROUND** .................................................................................................. 4

      A.   **Parties** ........................................................................................................ 4

      B.   **Factual Background**.................................................................................. 5

      C.   **Procedural Background** ........................................................................... 6

III.  **STANDARD OF REVIEW**................................................................................. 7

IV.   **ANALYSIS**........................................................................................................... 9

      A.   **Admissibility of Plaintiff's Evidence** ....................................................... 9

            1.   Photographic Evidence ....................................................... 12

            2.   Plaintiff's Testimony............................................................ 13

            3.   Defendants' Consumer Complaints ..................................... 13

            4.   Defendants' Customer Complaint Response ....................... 14

1

     5.  "Tentamus North America Analytical Report" ................................................... 15

     6.  "Aflatoxins as Cancer-Causing Substances," "Aflatoxins –Adverse
        Health Effects," and "Review of the Health Risks of Mold" Articles ............... 16

**B.**    **Summary Judgment Will Be Granted on Plaintiff's Strict Liability
       Claim (Count I)** ........................................................................................... 16

     1.  Whether the Product was Defective ................................................... 17

         a.  Design Defect ........................................................................ 18

         b.  Manufacturing Defect .......................................................... 20

         c.  Failure to Warn Defect ........................................................ 21

     2.  Whether the Alleged Defect was a Proximate Cause of Plaintiff's Injuries ....... 23

**C.**    **Summary Judgment Will Be Granted on Plaintiff's Negligence
       Claim (Count V)** .......................................................................................... 29

**D.**    **Summary Judgment Will Be Granted on Plaintiff's Breach of Implied
       Warranty of Merchantability Claim (Count III)** ........................................ 32

**E.**    **Summary Judgment Will Be Granted on Plaintiff's Negligent Infliction of
       Emotional Distress Claim (Count VII)** ...................................................... 34

**V.**  **CONCLUSION** .......................................................................................................... 36

## I.    INTRODUCTION

This case arises out of Plaintiff Sergei Kovalev's ("Plaintiff") alleged consumption of moldy bread, from which he claims to have developed severe food poisoning symptoms leading to emotional distress and psychological damage. (See Doc. No. 34 at 13-21.) Plaintiff, proceeding pro se, brings this suit against multiple Defendants, including (1) Lidl US, LLC, (2) Lidl US Operations, LLC, (3) H&S Bakery, Inc., (4) H&S Holdings Corporation, and (5) Does 1 through 10 (collectively "Defendants"). [1] (See Doc. No. 131-1 at 1.) Defendants Lidl US, LLC and Lidl US Operations, LLC ("Lidl Defendants") supply and operate the stores where Plaintiff purchased the bread. (Id. at 10-11.) Defendants H & S Bakery, Inc. and H & S Holdings Corporation ("H&S Defendants") are the manufacturers of the bread. (See id. at 6.) Does 1 through 10 are unidentified Defendants. (See id.)

In his Amended Complaint, Plaintiff alleged the following claims against Defendants under Pennsylvania common and statutory law: (1) strict liability, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of implied warranty of fitness for particular purpose, (5) negligence, (6) negligence per se, (7) negligent infliction of emotional distress, (8) fraud and fraudulent misrepresentation, (9) reckless endangerment, (10) violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, and (11) unjust enrichment. [2] (See Doc. No. 34.) On December 21, 2022, the Court granted in part Defendants' Motions to Dismiss. (See Doc. No. 76.) Thereafter, only the following claims remain in the case: (1) strict

---

[1]   On December 21, 2022, the Court dismissed Defendant Lidl Stiftung & Co. as a Defendant in this case. (See Doc. No. 76.) Defendant Lidl Stiftung & Co. KG ("Lidl Stiftung") is a German limited partnership and is the parent company of Lidl Defendants. (Id. at 3.)

[2]   The Amended Complaint (Doc. No. 34) is the operative Complaint in this case. Plaintiff filed the original Complaint on March 29, 2021 in the Philadelphia Court of Common Pleas. (See Doc. No. 1 at 1.) On July 23, 2021, Defendant removed the case to this Court. (Doc. No. 1.)

liability (Count I); (2) breach of the implied warranty of merchantability (Count III); (3) negligence (Count V); and (4) negligent infliction of emotional distress (Count VII).  (See id.)  On May 23, 2024, Defendants filed the instant Motion for Summary Judgment.  (Doc. No. 131.)  For reasons discussed below, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted.[3]

## II.    BACKGROUND

### A.    Parties

A brief recitation of the parties and their relationship to the incident with the allegedly moldy bread is instructive here.

> There are [two remaining] Lidl Defendants: (2) Lidl US, LLC; and (3) Lidl US Operations, LLC . . . Lidl US, LLC is a subsidiary of Lidl Stiftung and is a Delaware limited liability company.  (Doc. No. 34 ¶¶ 9-10.)  It is 'registered to conduct business under the laws of the State of Pennsylvania' and has a fictitious name registered with the Pennsylvania Department of State.  (Id. ¶ 10.)  Lidl US, LLC has its principal place of business in Arlington, VA.  (Id. ¶ 11.)  It creates and distributes Lidl food products and supplies with the assistance of other entities.  (Id. ¶ 12.)  Specifically, Plaintiff alleges that 'Lidl US, LLC is an agent and alter ego of Lidl Stiftung . . . where unity of control exists through a parent Lidl Stiftung . . . openly exercising substantially total ownership control over the management and activities of Lidl US, LLC and Lidl US Operations, LLC.'  (Id. ¶ 38.)  Lidl US Operations, LLC is also a Delaware limited liability company authorized to conduct business in Pennsylvania and is registered with the Pennsylvania Department of State.  (Id. ¶ 15.)  It has the same principal place of business as Lidl US, LLC.  (Id.

---

[3]   In a Supplemental Memorandum, Plaintiff argues that the preponderance of evidence burden applicable in civil cases means Plaintiff must only prove that it is more likely than not that Defendants caused his alleged injuries and that this proof should be considered by a jury rather than by the Court on summary judgment.  (Doc. No. 145 at 1.)  While Plaintiff cites the correct burden of proof, he neglects to consider the point of summary judgment:  that there must exist a genuine dispute of material fact for a jury to decide before the case can proceed to trial.  See Pavlik v. Lane Ltd./Tobacco Exporters Intern., 135 F.3d 876, 881 (3d Cir. 1998) (acknowledging that, in Pennsylvania, questions such as proximate cause are generally for the jury but, "if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law" to be decided by the court).  As will be explained further below, because Plaintiff relies on sparse evidence to support his claims, there is no genuine dispute of material fact and the questions presented throughout Defendants' Motion for Summary Judgment (Doc. No. 131) are questions of law for the Court to decide.

¶ 16.) Plaintiff states that Lidl US Operations, LLC is an "agent and alter ego" of Lidl US, LLC. (Id. ¶¶ 13, 18.) Plaintiff claims that this relationship is derived from "Lidl US, LLC openly exercising substantially total ownership control over the management and activities of Lidl US Operations, LLC." (Id. ¶ 46.) Lidl US Operations, LLC is "assigned a role for operation and maintenance of [the] supermarket chain." (Id. ¶ 44.)

* * *

The H&S Defendants are entities that manufacture Lidl's bread. (Id. ¶ 21.) Plaintiff's Amended Complaint avers that "Lidl Defendants with [the] participation of H & S Defendants[,] sold to Mr. Kovalev already contaminated and dangerous bread." (Id. ¶ 57.) H&S Defendants have registered a trademark with the Pennsylvania Department of State. (Id. ¶ 25.) They are Maryland corporations with a shared principal office in Maryland. (Id. ¶¶ 22-23.)

(Doc. No. 75 at 5-7.)

## B.    Factual Background

The Court will also briefly recite the facts at issue in this case:

Plaintiff purchased loaves of bread from two Lidl locations. (Id. ¶¶ 53, 67.) The first purchase occurred on March 19, 2021. (Id. ¶ 53.) A receipt copied in the Amended Complaint shows that Plaintiff purchased eight loaves of bread on that date. (Id.) The packaging describes the bread as "New & Improved" and Lidl's website touts its products as "High Quality." (Id. ¶¶ 54, 115, 118.) Plaintiff states that "each package of '12 Grain Bread' was manufactured under Lidl's name[ ] [and] was distributed[ ] and sold by Lidl." (Id. ¶ 54.) Further, "Lidl's name [was] printed on each package, including Lidl's address and telephone number." (Id.)

Plaintiff ate the first package of bread over a period of about two days and subsequently became ill. (Id. ¶ 60.) According to Plaintiff, the bread he ate was "extensively contaminated with dangerous disease-causing toxic mold (toxic fungus)," and he was unaware of its presence before ingesting the bread. (Id. ¶¶ 57-58, 60.) After eating bread from the first package, Plaintiff experienced "difficulty breathing [and] abdominal pain and discomfort." (Id. ¶ 60.) Plaintiff then decided to eat bread from a second package and "became violently sick with nausea, vomiting, abdominal pains and cramps, and severe general malaise." (Id. ¶ 61.) He inspected the bread and discovered various-colored mold. (Id.) Mold was also in the remaining packages he had purchased. (Id. ¶ 62.) Plaintiff states that he "sufferer[ed] from abdominal discomfort, some pain, and respiratory issues" for days. (Id. ¶ 63.)

On June 21, 2021, almost three months later, Plaintiff purchased four packages of "Enriched White Bread" from a different Lidl store located at 9175 Roosevelt

Boulevard, Philadelphia, Pennsylvania. (Id. ¶¶ 66, 69.) This packaging also contained a "New & Improved" sticker. (Id. ¶ 71.) He alleges that as he was consuming it, he "discovered a large piece of black substance baked inside [the] bread." (Id. ¶ 70.) Plaintiff's Amended Complaint characterizes the material as a "foreign object and/or dirt, and/or rodent/rat excrement." (Id.) Given that Plaintiff had partially consumed a piece of the bread without knowing whether he had ingested any of the black substance, he was "appalled and severely traumatized." (Id. ¶¶ 72-73.) He explains that he experienced "immediate mental anguish and emotional distress," that he was "terrified and placed in extreme fear of his life, safety, and well-being," that he experienced sleeplessness as well as "loss of enjoyment of life," and that the "incident continues to cause him [at the] present time mental anguish and emotional distress" which he is "struggling to overcome . . . but to no avail." (Id. ¶¶ 73-76.) Plaintiff also alleges that he "suffered a physical impact," "was in danger and at risk of an immediate injury," and experienced "emotional harm, mental and psychological distress." (Id. ¶¶ 172, 174.) The Amended Complaint details Plaintiff's concerns of potential future bodily harm, such as cancer or damage to his organs. (Id. ¶¶ 77-81.)

(Doc. No. 75 at 7-9.)[4]

### C.    Procedural Background

On March 29, 2021, Plaintiff filed his original Complaint in the Philadelphia Court of Common Pleas. (Doc. No. 1 ¶ 1.) On July 23, 2021, Defendants removed the case to this Court. (Doc. No. 1.) An Amended Complaint was filed and, as noted, Defendants filed Motions to Dismiss the Complaint. (Docs. No. 41, 66, 70, 73.) On December 21, 2022, the Court granted in part Defendants' Motions to Dismiss. (See Doc. No. 76.) Thereafter, the following claims remained in the case: (1) strict liability (Count I); (2) breach of the implied warranty of

---

[4]  In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff, for the first time, characterized the green discoloration on Defendants' 12 Grain Bread and the "black conglomerate" found in Defendants' Enriched White Bread as "foreign substances" rather than as mold or as a "foreign object and/or dirt, and/or rodent/rat excrement," respectively. (See Doc. No. 134 at 22.) As such, the Court will also refer to the green discoloration on Defendants' 12 Grain Bread as "foreign substances" in the bread and will refer to the "foreign object and/or dirt, and/or rodent/rat excrement" in Defendants' Enriched White Bread as either the "black conglomerate" or as the "foreign substances" in the bread.

merchantability (Count III); (3) negligence (Count V); and (4) negligent infliction of emotional distress (Count VII).  (See id.)

On May 23, 2024, Defendants filed the instant Motion for Summary Judgment.  (Doc. No. 131.)  On June 12, 2024, Plaintiff filed a Response in Opposition.  (Doc. No. 134.)  On June 24, 2024, Defendants filed a Reply.  (Doc. No. 136.)  On June 25, 2024, Plaintiff filed a Sur-Reply in Further Opposition to Defendants' Motion for Summary Judgment.  (Doc. No. 137.)  On September 11, 2024, the Court held a hearing on the Motion for Summary Judgment.  On September 25, 2024, both parties filed Supplemental Memoranda.  (Docs. No. 144, 145.)  The matter is now ripe for disposition.

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tse v. Ventana Med. Sys., Inc., 297 F.3d 210, 218 (3d Cir. 2002).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).

A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata,

511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur, 601 F.3d at 216).  When asserting that a material fact is or is not genuinely disputed, the parties may only cite to "admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); see also Williams v. Borough of West Chester, Pa., 891 F.2d 458, 471 (3d Cir. 1989) (Garth, concurring) ("[W]here the movant correctly states the law and the opposing [evidence] submitted in opposition to a summary judgment motion . . . do not set forth facts as would be admissible in evidence (see F.R.C.P. 56(e)) . . . the district court judge, in accordance with Federal Rule of Civil Procedure 56, must grant summary judgment to the movant.")

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)).  A party's failure to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, mandates the entry of summary judgment.  Celotex Corp., 477 U.S. at 322; Watson v. Eastman Kodak Co., 235 F.3d 851, 857–58 (3d Cir. 2000); see also J.F. Feeser, Inc. v. Serv–A–Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990).

The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–49.  Whenever a factual issue arises that cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the

potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

IV.     **ANALYSIS**

   A.     **Admissibility of Plaintiff's Evidence**

As an initial matter, because Plaintiff relies on a variety of evidence that would not be admissible at trial, the Court must first determine which evidence it may consider when determining whether a genuine dispute of material fact exists to defeat summary judgment.  At the summary judgment stage, a court is constrained to considering only that evidence that may be admissible at trial.  See Fed. R. Civ. P. 56(e); Williams, 891 F.2d at 471 ("[W]here the [moving party] correctly states the law and the opposing [evidence] submitted in opposition to a summary judgment motion . . . do not set forth facts as would be admissible in evidence (see F.R.C.P. 56(e)) . . . the district court judge, in accordance with Federal Rule of Civil Procedure 56, must grant summary judgment to the movant."); Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.")

Evidence is admissible at trial if it is relevant and not otherwise excluded under the Federal Rules of Evidence.  To be relevant, the evidence must have "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  However, the Federal Rules of Evidence exclude certain evidence as automatically irrelevant, including evidence of subsequent remedial measures.  See Fed. R. Evid. 407.  One reason otherwise relevant evidence is inadmissible is if the evidence is hearsay and does not come within an exception to the hearsay rule.  Hearsay is defined as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party

9

offers in evidence to prove the truth of the matter asserted in the statement."[5]  Fed. R. Evid. 801(c).

However, there are numerous exceptions to the rule against hearsay.  See Fed R. Evid. 803-804,

807.

Here, in opposing Defendants' Motion for Summary Judgment, Plaintiff relies on the

following evidence:[6]

1. Extensive photographic evidence.

2. Plaintiff's testimony.

3. Original defective bread (White and 12-Grain Bread). Plaintiff has in his possession the bread samples depicted on the pictures [] that were kept frozen for all these years; and during discovery Plaintiff informed all Defendants (and listed as an [sic] evidence) that not only the pictures of the defective bread but the original defective bread would be presented to a jury at trial. In addition, three fully sealed packages of 12-Grain Bread (full of foreign substance resembling mold) would also be presented to a jury.

4. A list of complaints compiled by Defendants and depicting numerous complaints about abhorrent "quality" of the White and 12-Grain Bread that was designed and manufactured by Defendants. Instead of providing records for customers' complaint about Lidl's bread for seven (7) years as requested by Plaintiff, Defendants produced records only for 28 days, from February 1, 2021 and to February 28, 2021. Even during 28 days, Defendants received at least eighty-one (81) or more complaints (if Defendants did not reduce the actual numbers) about significant structural, mold, and rodent contaminants present in Lidl's defective bread. See Exhibit G that was attached to Plaintiff's original Response. All these complaints were received even before Plaintiff purchased Lidl's defective bread.

5. "Customer Complaints Response" created on March 26, 2021 by Defendant H&S Bakery. This report was attached as Exhibit H to Plaintiff's original Response. The report states that in reference to "12 Grain Bread," "Multiple consumer complaints received during week ending 3-27-21 for early onset of

---

[5]  A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.  Fed. R. Evid. 801(a).  A "declarant" is defined as "the person who made the statement."  Fed. R. Evid. 801(b).

[6]  Of note, Plaintiff took no depositions and announced at the Court's September 11, 2024 hearing on the Motion that he had no plans to call any witnesses during trial, expert or otherwise. Instead, he relies solely on the listed evidence.

mold within the bread loaf slices (internal not external on crust)." "Root Cause Investigation and Corrective Action - Inadequate mold inhibition in formulation - 1- Mold inhibition in formulation will be increased and 2 - Increase cleaning frequency of bread slicing equipment."

6. "Tentamus North America Analytical Report" that was attached to Plaintiff's original Response as Exhibit I. The Report was created for "Twelve Grain Bread by Lidl." This report was made on April 1, 2021 and indicated that "Twelve Grain Bread by Lidl" was contaminated with mold (testing samples were provided by Defendants and not by Plaintiff).

7. The published article "Aflatoxins as Cancer-Causing Substances." Published by the National Cancer Institute and was attached to Plaintiff's original Response as Exhibit J.

8. The published article "Aflatoxins – Adverse Health Effects." Published by the World Health Organization and was attached to Plaintiff's original Response as Exhibit K.

9. The published article "Review of the Health Risks of Mold." It was attached to Plaintiff's original Response as Exhibit L.

(Doc. No. 145 at 5-6.)  Because the Court is constrained to considering only that evidence that would be admissible at trial, the Court may only consider the photographic evidence, Plaintiff's testimony and the original defective bread (numbers 1, 2 and 3, respectively, on the above list).[7] The Court will explain its decisions on the admissibility of the proffered evidence in turn.

---

[7]  While Plaintiff offers as evidence the "original defective bread" that he has kept throughout the multi-year process of litigating this case, the Court finds that, for the purpose of summary judgment, the photographs of the bread on the record will suffice to make the same point the physical pieces of bread could make.  Accordingly, the Court will only reference the photographs of the bread throughout its discussion.

### 1.      Photographic Evidence

Plaintiff has introduced numerous photographs, reproduced below, of the allegedly

defective bread at issue in this case.  (Doc. No. 134, Ex. D, F.)







|  |  |
|---|---|
| The 12 Grain Bread<br>(Doc. No. 134 Ex. D.) | The Enriched White Bread<br>(Doc. No. 134 Ex. F.) |

For photographs to be admissible at trial, they must be authenticated through "evidence sufficient

to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  This

requires "the testimony of a witness familiar with the scene depicted in the photograph who

testifies that the photograph fairly and accurately represents the scene."  Lorraine v. Markel

American Ins. Co., 241 F.R.D. 534, 561 (D. Md. 2007).  Here, Plaintiff can undoubtedly

authenticate the photographs of the bread himself.  Accordingly, the photographs are admissible

and the Court may consider them for the purpose of deciding Defendants' Motion for Summary

Judgment.

### 2.      Plaintiff's Testimony

Plaintiff offers his own testimony as evidence of causation between the allegedly defective bread and his claimed injuries, specifically the psychological injuries such as "emotional distress, psychological torment, pain and suffering, fear, discomfort, humiliation, and similar."  (Doc. No. 145 at 9.)  Because Plaintiff would be permitted to testify about his "subjective sensations" at trial, the Court will consider Plaintiff's proposed testimony in its discussions on causation.  See In re Bayside Prison Litigation, 341 F.App'x 790, 793 (3d Cir. 2009) (permitting the plaintiff to testify "that he has suffered chronic headaches and wrist pain since the date of the [alleged] assault" because his testimony was limited to "his subjective sensations" and thus admissible under Federal Rule of Evidence 701 in that it was "rationally based on . . . [his] perception" and was "not based on scientific, technical, or other specialized knowledge"); see also Fed. R. Evid. 701 (allowing opinion testimony by a lay witness if the testimony "is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . .").

### 3.      Defendants' Consumer Complaints

Plaintiff offers as evidence of defect a list of consumer complaints reported to Defendants concerning the quality of their bread, which Plaintiff obtained from Defendants during discovery. (Doc No. 134, Ex. G.)  While evidence of other similar instances of mold and foreign substances being found in Defendants' bread is certainly relevant, the list offered by Plaintiff is hearsay and does not come within an exception to the hearsay rule.  The list was created by an out-of-court declarant and is being offered to prove the truth of the matter asserted, namely that Defendants' bread is moldy and contains foreign substances.  While the business records exception to hearsay

contained in Federal Rule of Evidence 803(6) may apply, this exception requires the document to either be certified or supported by testimony of the record's custodian or other qualified witness. [8] See Fed. R. Evid. 803(6). Because the list is not certified and is unsupported by testimony, it is inadmissible hearsay.

### 4.  Defendants' Customer Complaint Response

Plaintiff also offers as evidence of defect another document he received from Defendants during discovery, titled "Customer Complaint Response." (Doc. No. 134, Ex. H). This document details changes Defendants made after they received consumer reports of "early onset [] mold within the bread loaf slices." (Id.) Because this document details a subsequent remedial measure, it is excluded from the Court's consideration under Federal Rule of Evidence 407, Subsequent Remedial Measures. See Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; a need for a warning or instruction.")

---

[8] Federal Rule of Evidence 803(6) provides in pertinent part:

> A record of an act, event, condition, opinion, or diagnosis [is excepted from the rule against hearsay] if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

5. **"Tentamus North America Analytical Report"**

Plaintiff also offers as evidence an uncertified laboratory report obtained from Defendants, titled the "Tentamus North America Analytical Report," which reports that testing on Defendants' 12 Grain Bread resulted in "990 cfu/g" of mold.  (Doc. No. 134, Ex. I.)  However, Plaintiff offers no witnesses to testify about this report.  In this regard, the Third Circuit Court of Appeals' decision in Collins v. Jones is instructive here.  664 Fed.App'x 247 (3d Cir. 2009).  In Collins, the plaintiff attempted to introduce into evidence a laboratory report finding that a plastic bag tested negative for marijuana.  Id. at 249.  The Third Circuit affirmed the District Court's findings that the lab report was inadmissible as both hearsay and under Daubert v. Merrell Dow Pharmaceuticals.  Id. (citing Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993)).  First, the court found that the lab report was hearsay and not within the business record exception in Federal Rule of Evidence 803(6).  Id.  Rule 803(6) "expressly requires 'the testimony of the custodian or another qualified witness' or a valid certification for the record to be admissible," which the lab report lacked.  Id. (quoting Fed. R. Evid. 803(6)).  Second, the court found that the plaintiff had failed to introduce testimony validating the reliability of the report under Daubert.  Id.  "[T]o treat the lab report as 'true,' and therefore as 'scientific knowledge,' the [Daubert] Court required that the evidence be 'supported by appropriate validation.'"  Id. (quoting Daubert, 509 U.S. at 590) (internal citations omitted).

Here, Plaintiff's attempt to introduce the "Tentamus North America Analytical Report" fails for the same reasons enumerated in Collins.  First, Plaintiff is submitting a lab report prepared by an out-of-court declarant to prove the truth of the matter asserted, namely that Defendants' 12 Grain Bread contained mold.  This makes the report hearsay.  Like the report in Collins, the "Tentamus North America Analytical Report" does not fit within the business records exception to

hearsay because it is not certified and Plaintiff offers no testimony from a custodian or other qualified witness to authenticate the report.  Second, because Plaintiff wants the lab report to be treated as true, and therefore as scientific knowledge, <u>Daubert</u> requires testimony on the report's reliability.  As discussed above, Plaintiff offers no witnesses to testify to the lab report's validity, or otherwise.  Accordingly, the Court cannot consider the "Tentamus North America Analytical Report" because it is inadmissible as hearsay and under <u>Daubert</u>.

>   **6.    "Aflatoxins as Cancer-Causing Substances," "Aflatoxins –**
>   **Adverse Health Effects," and "Review of the Health Risks of Mold"**
>   **Articles**

In support of his Opposition to Defendants' Motion for Summary Judgment, Plaintiff attached as exhibits printouts of three online articles that each discuss the dangers of toxins found in mold.  (<u>See</u> Doc. No. 134, Exs. J, K, L.)  Plaintiff introduced these articles as evidence of his alleged injuries, specifically as evidence of possible long-term health effects that could result from consuming mold.  (Doc. No. 145 at 10.)  Because these articles were written by out-of-court declarants and Plaintiff offers them for the truth of the matters asserted, namely that toxins found in mold can "create serious long term health effects," the articles are hearsay to which no exception applies and may not be considered on summary judgment.  (<u>Id.</u>)  <u>See also</u> <u>Southco Inc. v. Fivetech Tech. Inc.</u>, 982 F. Supp. 2d 507, 514-15 (E.D. Pa. 2013) ("[N]ewspaper articles are considered hearsay and, only in very exceptional circumstances not present here, may be used as evidence during litigation. Internet websites and web postings are also typically inadmissible as hearsay.") (internal citations omitted).

>   **B.    Summary Judgment Will Be Granted on Plaintiff's Strict**
>   **Liability Claim (Count I)**

Because Plaintiff fails to offer admissible evidence to establish a genuine dispute of material fact that Defendants' bread was defective and that this defect proximately caused

Plaintiff's injuries, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on Count I.  Under Pennsylvania law, "a seller may be liable in strict liability . . . for injuries caused by defective products."  Sikkelee v. Precision Airmotive Corp., 907 F.3d 701, 709 (3d Cir. 2018).  "The test for strict liability [in Pennsylvania] is set forth in the Restatement (Second) of Torts § 402A (1965)."  Id. (quoting Tincher v. Omega Flex, Inc., 104 A.3d 328, 351 (Pa. 2014)).  Under this test, for a plaintiff to succeed on a strict liability claim for a defective product, he must prove the following:  "(1) that the product was defective; (2) that the defect was a proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands."  Id.  The Court will analyze each of these requirements in turn.

### 1. Whether the Product was Defective

There are three types of defective conditions that give rise to a products liability claim:  (1) a design defect, (2) a manufacturing defect, or (3) a failure to warn defect.  Phillips v. A-Best Products Co., 665 A.2d 1167, 1170 (Pa. 1995) [hereinafter Phillips I].  To prove a product was defective, a plaintiff may offer circumstantial evidence, including evidence of the following:

> (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

Gapsky v. RTM Acquisition Co., LLC, t/d/b/a Arby's Restaurant, No. 154 WDA 2013, 2014 WL 10979830, at *2 (Pa. Super. Ct. 2014).   Because Plaintiff asserts that he has "demonstrated not only one but all three types of defects," the Court will analyze each type of defect separately.  (Doc. No. 134 at 11.)

### a.      Design Defect

To prove a design defect, a plaintiff may show either:  (1) that the product's danger is unknowable and unacceptable to the average or ordinary consumer (the "consumer expectations standard"), or (2) that a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions (the "risk-utility standard").[9]  Sikkelee, 907 F.3d at 710.  The consumer expectations standard is not applicable where an "ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product."  High v. Pennsy Supply, Inc., 154 A.3d 341, 348 (Pa. Super. Ct. 2017) (quoting Tincher, 104 A.3d at 387). "[T]he plaintiff must establish that the product was unsafe for its intended user."  Phillips v. Cricket Lighters, 841 A.2d 1000, 1007 (Pa. 2003).

Here, Defendants assert that an expert opinion is required to prove Defendants' bread product was defective.  (Doc. No. 131-1 at 10.)  Defendants argue that, without testing the bread and receiving "an expert report opining that the bread was contaminated with" foreign substances, Plaintiff's "claims that the bread he ate was . . . contaminated" are "pure speculation."  (Id. at 12-13.  In response, Plaintiff contends that the pictures he provided of the discolored 12 Grain Bread and a "black conglomerate" inside the Enriched White Bread demonstrate design defects which were "not known to Plaintiff, and would [] be unacceptable to the average or ordinary consumer." (Doc. No. 134 at 19, Ex. D, Ex. F.)  To Plaintiff, these pictures make it "obvious that expert testimony would not be required" because "who would possibly design . . . a food product contaminated with multiple foreign substances and what [can] expert testimony [] reveal in

---

[9]   Because Plaintiff did not argue a design defect exists under the risk-utility standard, the Court will not analyze the possibility of a defect under this standard.

addition to the extensive photographic evidence already showing that [Defendants'] bread was contaminated with foreign substances?" (Id. at 20).

Plaintiff's photographs, pictured above, do little to create a genuine dispute of material fact that a design defect exists. To reiterate, in order to succeed under the consumer expectations standard, Plaintiff must show "the product's danger is unknowable and unacceptable to the average or ordinary consumer." Sikkelee, 907 F.3d at 710. But Plaintiff's pictures fail to meet this standard. Even assuming arguendo that the bread's alleged danger is unknowable to the average or ordinary consumer, Plaintiff has failed to demonstrate that discoloration on Defendants' 12 Grain Bread and a "black conglomerate" in Defendants' Enriched White Bread would be unacceptable to the average or ordinary consumer.

In Plaintiff's words, the discoloration on Defendants' 12 Grain Bread consists of "multi-color large greenish areas [] clearly showing [an] unmistakable resemblance to mold contamination . . . ." (Doc. No. 134 at 22.) Without evidence that the discoloration allegedly found on Defendants' 12 Grain Bread resulted from faulty design rather than merely from mold that grew while the bread was in Plaintiff's possession, the Court cannot draw the inference that the discoloration of the 12 Grain Bread would be unacceptable to the average or ordinary consumer at the time it was purchased. As Defendants assert, "[b]read gets moldy for many reasons, many of which have nothing to do with the bakers or the stores that sell[] the product." (Doc. No. 131-1 at 10.)

Moreover, without testing to identify the "black conglomerate" Plaintiff alleged he found in Defendants' Enriched White Bread, there is also insufficient evidence to conclude that the presence of the "black conglomerate" would be unacceptable to an average or ordinary consumer. Plaintiff argues that the mere presence of the "black conglomerate" in Defendants' Enriched White

Bread would be unacceptable to the average or ordinary consumer.  But without evidence of the identity or composition of the "black conglomerate," the Court cannot assume the "black conglomerate" in the Enriched White Bread would be unacceptable to the average or ordinary consumer.  If Plaintiff had tested the "black conglomerate" and confirmed his speculation that it "appeared to be something like a large piece of foreign object and/or dirt, and/or rodent/rat excrement," this would better support Plaintiff's argument that the inclusion of this foreign substance in Defendants' bread would be unacceptable to the average or ordinary consumer.  (Doc. No. 34 at ¶ 70.)  However, based on the above pictures provided by Plaintiff and viewing them in the light most favorable to him, an average or ordinary consumer could observe the "black conglomerate" in their bread and similarly speculate that it is instead a fleck of burnt bread or perhaps a stray grain from Defendants' 12 Grain Bread accidentally baked into the Enriched White Bread.  (See Doc. No. 136, Ex. E.)  Because Plaintiff presents no admissible evidence other than photographs of the bread about which speculation arises, there is no genuine dispute of material fact concerning the existence of a design defect in either of Defendants' 12 Grain Bread or Enriched White Bread.  See Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment.")

### b.   Manufacturing Defect

To prove a manufacturing defect, a plaintiff must offer either evidence of "a breakdown in the machine or a component thereof," or "evidence eliminating abnormal use or reasonable, secondary causes for the malfunction."  Riley v. Warren Mfg., Inc., 688 A.2d 221, 224 (Pa. 1997); Rogers v. Johnson & Johnson Prods., Inc., 565 A.2d 751, 754 (Pa. 1989).  Here, Defendants maintain that Plaintiff cannot prove that either of their bread products were defective without expert testimony.  (See Doc. 131-1 at 10.)  Conversely, Plaintiff again contends that the

photographic evidence of the "foreign substances" in Defendants' 12 Grain and Enriched White Breads is proof of a manufacturing defect. (Doc. No. 134 at 19, Ex. D, Ex. F.)

But by offering the pictures as the only admissible evidence to support his manufacturing defect claim, Plaintiff does not demonstrate a breakdown in a machine or component thereof and also fails to eliminate the possibility of a reasonable, secondary cause for the presence of discoloration on and a "black conglomerate" in Defendants' bread. For example, the photographs provided by Plaintiff once again do not rule out the possibility that the discoloration pictured on Defendants' 12 Grain Bread was mold that grew on the bread after it entered Plaintiff's possession. (See Doc. No. 134, Ex. D.) Similarly, without an expert opinion identifying the "black conglomerate," the Court may only speculate as to what led to its presence inside Defendants' Enriched White Bread. (See Doc. No. 134, Ex. F.) Accordingly, because the Court cannot overlook the possibility of a reasonable secondary cause for the presence of the alleged "foreign substances" in Defendants' breads, no genuine dispute of material fact exists concerning the possibility of a manufacturing defect.

### c.    Failure to Warn Defect

Finally, to prove a failure to warn defect, a plaintiff must show both "that the product was sold in a defective condition 'unreasonably dangerous' to the user, and that the defect caused [the] plaintiff's injury." Phillips I, 665 A.2d at 1171 (quoting Walton v. Avco Corp., 610 A.2d 454, 458 (Pa. 1992)). Here, as above, Defendants argue that Plaintiff cannot prove that either of Defendants' bread products were defective without expert testimony. (See Doc. 131-1 at 10.) To counter,

Plaintiff merely offers the conclusory statement that "Defendants failed to warn Plaintiff that [Defendants'] defective bread contains multiple foreign substances."[10]  (Doc. No. 134 at 20.)

The only admissible evidence Plaintiff offers to support this claim are the photographs of the discolored bread and the bread containing the "black conglomerate."  But these photographs fail to prove that the bread was sold to Plaintiff in a defective condition, that its condition was "unreasonably dangerous" to Plaintiff, or that the alleged defect caused Plaintiff's injuries.  As discussed above, mere photographic evidence of "multi-color large greenish areas [] clearly showing [an] unmistakable resemblance to mold contamination" does not prove that the bread was sold in a defective condition.  (Doc. No. 134 at 22.)  There is no evidence establishing that the 12 Grain Bread was discolored when Plaintiff bought the bread.  By Plaintiff's own admission, he did not notice any discoloration on the 12 Grain Bread until he started eating his second loaf several days after he first purchased eight loaves of this bread.  (See Doc. No. 34 at ¶ 60-61.)

Moreover, and also discussed above, the presence of a "black conglomerate" pictured within Defendants' Enriched White Bread fails to prove any defect.  The picture of the "black conglomerate" in the Enriched White Bread does nothing to prove the "back conglomerate" was unreasonably dangerous or caused Plaintiff's alleged injuries.  As speculated above, the "black

---

[10]  Plaintiff also argues that "Defendants intentionally defrauded and misled Plaintiff when they attached to each defective bread package labels (green stickers) claiming that such defective bread is 'New and Improved.'"  (Doc. No. 134 at 20.)  And Plaintiff's Amended Complaint alleges that Defendants' website claims "they are offering 'high quality' products."  (See Doc. No. 34 at ¶ 118.)  But labeling bread as "New and Improved" and claiming products are "high quality" are promotional opinions upon which claims for failure to warn may not be based.  See Phillips I, 665 A.2d at 1171 (explaining that strict liability for failure to warn requires that a plaintiff prove "the product was sold in a defective condition 'unreasonably dangerous' to the user, and that the defect caused [the] plaintiff's injury").  Said differently, whether Defendants' bread was labeled "New and Improved" or "high quality" does not prove the product was sold in a defective condition "unreasonably dangerous" to the user, nor that the alleged defect caused Plaintiff's injury.

conglomerate" could have been a fleck of burnt bread or a stray grain from Defendants' 12 Grain Bread accidentally baked into the Enriched White Bread.  Because Plaintiff fails to offer any evidence supporting a failure to warn defect, there is no genuine dispute of material fact concerning the existence of a failure to warn defect.

While the finding that no genuine dispute of material fact exists concerning whether the products were defective would alone entitle Defendants to a grant of summary judgment on Plaintiff's strict liability claim (Count I), the Court will still consider whether a genuine dispute of material fact exists on causation.

### 2.     Whether the Alleged Defect was a Proximate Cause of Plaintiff's Injuries

As mentioned above, to succeed on a products liability claim for a defective product, a plaintiff must prove "that the defect was a proximate cause of the plaintiff's injuries." Pavlik v. Lane Ltd./Tobacco Exporters Intern., 135 F.3d 876, 881 (3d Cir. 1998).  In personal injury cases, such as the instant case, "[g]enerally, causation must be established through expert medical testimony." Lattanze v. Silverstrini, 448 A.2d 605, 608 (Pa. Super. Ct. 1982); see also Gapsky, 2014 WL 10979830, at **2, 3 (affirming summary judgment after plaintiff failed to offer expert evidence "to support her [strict liability] claim that her consumption of a chicken sandwich at [defendant's restaurant] caused her [food] poisoning.")  However, expert testimony on causation is not required when "an obvious causal relationship exists where the injuries are either 'immediate and direct' or the 'natural and probable' result of the negligent act." Lattanze, 448 A.2d at 608; see also Whyte v. Stanley Black & Decker, Inc., 514 F. Supp. 3d 684, 703 (W.D. Pa. 2021) ("[T]he issue of causation is common to both a strict-liability claim and a negligence claim.")  An obvious causal relationship exists where the "injury complained of and the alleged negligent act . . . [are] 'so closely connected and so readily apparent that a layman could diagnose (except by guessing)

the causal connection.'" <u>Lattanze</u>, 448 A.2d at 608 (quoting <u>Smith v. German</u>, 253 A.2d 107, 109

(Pa. 1969) (internal citations omitted)).  But where "there were other equally likely or more likely

causes of the injury," expert testimony on causation is required.  <u>Lattanze</u>, 448 A.2d at 609.

      Here, Defendants argue that Plaintiff cannot prove causation without an expert opinion.

(Doc. No. 131-1 at 10.)  To support this argument, Defendants rely on <u>Gapsky v. RTM Acquisition</u>

<u>Co., LLC, t/d/b/a Arby's Restaurant</u>, No. 154 WDA 2013, 2014 WL 10979830 (Pa. Super. Ct. Mar.

7, 2014).  (<u>See</u> <u>id.</u>)  In <u>Gapsky</u>, the plaintiff consumed a chicken sandwich at the defendant's

restaurant around 3:00 p.m. or 4:00 p.m. and, the following morning, became sick.  <u>Gapsky</u>, 2014

WL 10979830, at *1.  Several days later, the plaintiff sought medical treatment and was

subsequently hospitalized for five days and diagnosed with salmonella poisoning, among other

ailments.  <u>Id.</u>  When the plaintiff sued the restaurant for personal injuries arising from her food

poisoning, including claims of strict liability and negligence, the trial court granted the restaurant's

motion for summary judgment, holding the plaintiff had failed to prove "that her consumption of

the sandwich was the cause of her salmonella diagnosis several days later."  <u>Id.</u>  The Pennsylvania

Superior Court affirmed the lower court's decision, noting the plaintiff "presented no evidence that

the sandwich was defective or caused her salmonella poisoning, but rather 'simply [relies] on the

temporal relationship between her consumption of the chicken sandwich and her illness.'"  <u>Id.</u> at

*3.  Without causation evidence, the Superior Court concluded that the plaintiff's "claims of

negligence and strict liability invite pure speculation as to what caused her ailment."  <u>Id.</u>

      In response to the evident holding in <u>Gapsky</u> to the facts of this case, Plaintiff claims that

"expert testimony [is] only required if the subject matter of the product liability claim is of a

'highly technical nature.'"  (<u>See</u> Doc. No. 134 at 20 (quoting <u>McCracken v. Ford Motor Co.</u>, 392

F.App'x 1, 3 (3d Cir. 2010).)  Instead, Plaintiff cites to <u>Padillas v. Stork-Gamco, Inc.</u>, 186 F.3d

412, 416 (3d Cir. 1999) in support of his argument that expert testimony is not necessary where "testimony and pictures may enable the jury to see the construction of the [allegedly defective product] and the manner of its use."  (Id.); see also Padillas, 186 F.3d at 416 (considering a product defect case in which the plaintiff's arm was injured on a machine's unguarded "horizontally rotating blade" and holding that testimony and photographs of the machine could be sufficient evidence for the plaintiff to submit his defect claim to the jury).  Plaintiff asserts his product defect claim is "fully supported with the sale receipts and photographic evidence about the defective product containing foreign substances that obviously should not be there."  (Id. at 21.)

However, the instant case is more analogous to Gapsky than to Padillas.  In Padillas, the Third Circuit concluded that the testimony and photographic evidence offered by the plaintiff could allow the jury to infer that the machine's alleged defect, namely its unguarded blade, caused the plaintiff's injury.  Padillas, 186 F.3d at 415-16.  But here, the evidence offered by Plaintiff, namely the sales receipts and photographs of bread allegedly containing "foreign substances," would not allow a jury to infer that Plaintiff's consumption of this bread caused his injuries.  (See Doc. No. 134, Exs. C, D, E, F.)  As Defendants point out, Plaintiff "cannot establish that his stomach upset was not the result of a virus, or that it may have been caused by some other food that he ingested that day."  (Doc. No. 144 at 4.)  Because "there were other equally likely or more likely causes of the injury," expert testimony on causation is required.  Lattanze, 448 A.2d at 609.

Furthermore, in Gapsky, the Superior Court held that expert testimony was needed to prove the plaintiff's consumption of the defendant restaurant's sandwich caused her salmonella diagnosis.  Gapsky, 2014 WL 10979830, at *1.  Here, Plaintiff only offers as evidence the sales receipts and pictures of discoloration on Defendants' 12 Grain Bread and a "black conglomerate" inside Defendants' Enriched White Bread.  (See Doc. No. 134, Exs. C, D, E, F.)  But Plaintiff offers

no evidence that it was his consumption of the discolored bread or the "black conglomerate" within the bread that caused him to "become violently sick with nausea, vomiting, abdominal pains and cramps, and severe general malaise[] and [] severely traumatized, physically and psychologically by such poisoning experience."  (Doc. No. 134-1 at 2.)  Instead, like the plaintiff in <u>Gapsky</u>, Plaintiff relies on the temporal relationship between the time he allegedly consumed the bread and the time he allegedly began to feel sick to prove causation.  But unlike the plaintiff in <u>Gapsky</u> who was diagnosed by a doctor with salmonella poisoning after consuming the defendant's sandwich, Plaintiff has failed to offer proof beyond his own testimony that he actually suffered the injuries alleged.  Because no layman could, except by guessing, diagnose the causal connection between Plaintiff's alleged consumption of the bread and his alleged injuries, expert testimony is required to prove causation.  Without such expert testimony, the photographic evidence Plaintiff offers to prove causation is insufficient.[11]

In addition to photographic evidence, Plaintiff also offers his own testimony to establish causation between the allegedly defective product and his purported psychological injuries.  (Doc. No. 145 at 9.)  To counter, Defendants refer to numerous cases also filed by Plaintiff, both before and after Plaintiff initiated the instant case, in which Plaintiff claims similar psychological injuries.  (<u>See</u> Doc. No. 144 at 5-6.)  Because "[e]vidence of a prior injury is relevant in determining the measures of damages when the [instant] lawsuit claims injury to the same part of the body," the Court will consider only those cases previously filed by Plaintiff that allege similar psychological injuries sustained before March 19, 2021, the date Plaintiff alleged to have first purchased

---

[11]   In his Supplemental Memorandum, Plaintiff acknowledges that "physical manifestations of internal injuries, for example . . . gastroenteritis, may require [] medical expert testimony" and that "Plaintiff from a lay person perspective possibly would not be able to create causation between gastroenteritis and [the] defective product."  (Doc. No. 145 at 9.)

Defendants' bread.  (See Doc. No. 34 at 13); Lee v. Wakeman, No. 1:19-cv-00055, 2022 WL 541522, at *1 (W.D. Pa. Feb. 23, 2022); see also Abed-Rabuh v. Hoobrajh, No. 3:17-cv-15, 2019 WL 4935393, at *4 (W.D. Pa. July 10, 2019) (allowing evidence that the plaintiff had sustained previous back injuries to assist the jury in determining the cause and extent of the plaintiff's current back injuries at issue in the case).

Defendants cite three other cases initiated by Plaintiff in which he allegedly sustained similar psychological injuries prior to March 19, 2021.  (See Doc. No. 144 at 6.)  First, in Kovalev v. WalMart Inc., et al., Plaintiff alleged injuries including "severe mental trauma, psychological torment, and severe distress" from an event occurring on February 10, 2020.  Kovalev v. WalMart Inc., et al., No. 22-1217, 2022 WL 6775714, at *1 (E.D. Pa. 2022).  Second, in Kovalev v. Jefferson Health – Northeast, in connection with an incident occurring on August 5, 2020, Plaintiff alleged "psychological trauma, mental distress and anxiety and loss of enjoyment of life, emotional distress and mental anguish."  (Doc. No. 144 at 6); see also Kovalev v. Jefferson Health – Northeast, No. 220800839, 2024 WL 2060737, at *4 (Ct. Common Pleas Pa. Mar. 15, 2024) (reiterating the events leading to Kovalev filing the complaint against Jefferson Health).  Third, in Kovalev v. Callahan Ward 12th Street LLC, et al., Plaintiff alleged he sustained "[p]sychological trauma, mental distress and anxiety" after a fall that occurred on August 5, 2020.  See Kovalev v. Callahan Ward 12th Street, LLC, et al., No. 693 EDA 2023, 2024 WL 1253632, at *1 (Pa. Super. Ct. Mar. 25, 2024).[12]

---

[12]  While Defendants only cite three cases in which Plaintiff alleges similar psychological injuries occurring prior to March 19, 2021, several other cases filed by Plaintiff fit within this category. See, e.g., Kovalev v. City of Phila., No. 19-5790, 2020 WL 762373 (E.D. Pa. Feb. 14, 2020) (alleging emotional distress stemming from a December 2015 administrative hearing); Kovalev v. Rubinstein, No. 180201532, 2020 WL 1899842, at *2 (Pa. Super. Ct. Apr. 17, 2020) (seeking damages for "pain and suffering, loss of enjoyment of life, psychological trauma, emotional distress, [and] mental anguish" in connection with a December 18, 2015 dental appointment);

Here, Plaintiff alleges almost word-for-word the same psychological injuries that he alleged in each of his prior cases mentioned above.  Specifically, he alleges "psychological trauma, pain and suffering, [and] loss of enjoyment of life" resulting from his consumption of Defendants' bread.  (Doc. No. 34 at 3.)  And as mentioned above, to prove that the "foreign substances" in Defendants' bread caused these alleged psychological injuries, Plaintiff offers only his own testimony.  Because Plaintiff alleges substantially the same psychological injuries in his many other lawsuits, Plaintiff's proposed testimony is not sufficient on its own to prove causation.  As Defendants assert, "[t]he simple sight or ingestion of mold, even with some gastrointestinal distress, is not so clearly a cause of emotional distress or psychological injury so as to permit a jury to ponder its cause or effect without some expert opinion to guide them."  (Doc. No. 144 at 7.)  Without expert testimony, a jury would have to speculate on the difference between the psychological injuries allegedly stemming from the instant case and those allegedly stemming from any of Plaintiff's other cases mentioned <u>supra</u>.  Because he provides no such expert testimony, Plaintiff has failed to establish that a genuine dispute of material fact exists concerning whether Defendants' allegedly defective bread was the proximate cause of Plaintiff's injuries.[13]

---

<u>Kovalev v. Stepansky</u>, No. 19-5579, 2019 WL 6716737, at *1 (E.D. Pa. Dec. 10, 2019) (seeking damages for his "loss of enjoyment of life, psychological trauma, emotional distress and mental anguish" in connection with November 20, 2015 and November 25, 2015 visits to the defendant's dental office).

[13] In his Supplemental Memorandum, Plaintiff further argues that each emotional distress claim alleged in his various other lawsuits is different and asserts that "it is obvious that Plaintiff is not including any emotional distress related, for example, to violations of the telecommunications act into the current legal action that includes an emotional distress related to the defective bread sold by Defendants."  (Doc. No. 145 at 15.)  But because Plaintiff uses substantially the same language in his many lawsuits when referencing his alleged psychological injuries, it is not obvious that each instance of emotional distress is different.  Accordingly, Plaintiff must present expert testimony to help a jury differentiate between the psychological injuries caused in this case and those caused in Plaintiff's other cases.  <u>See</u> <u>Montgomery v. Bazaz-Sehgal</u>, 798 A.2d 742, 750 (Pa. 2002) ("Where there is no obvious causal

Accordingly, without any admissible evidence beyond photographs and his own proposed testimony, Plaintiff has not raised a genuine dispute of material fact on his strict liability claim alleged in Count I, and Defendants' Motion for Summary Judgment (Doc. No. 131) on this Count will be granted.[14]

### C.   Summary Judgment Will Be Granted on Plaintiff's Negligence Claim (Count V)

Because Plaintiff offers no admissible evidence to establish a genuine dispute of material fact on causation, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on the Count V negligence claim.  In Pennsylvania, "[t]o prevail in a negligence action, a plaintiff must show that (1) the defendant owed a duty of care, (2) the breach of which (3) <u>caused</u> (4) damages."  <u>See</u> <u>State Farm Fire & Casualty Co. v. Waterbury Kitchen and Bath, Inc.</u>, et al., 2023 WL 5538048, at *2 (E.D. Pa. Aug. 25, 2023) (emphasis in original).  Here, Defendants take issue with Plaintiff's ability to prove causation, arguing that Plaintiff has again failed to produce the necessary expert testimony and cannot rely on the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u> in the place of such testimony.  (Doc. No. 131-1 at 14.)  Because the Court already addressed Plaintiff's failure to produce expert testimony to establish a genuine dispute of material fact as to causation for

---

relationship, unequivocal medical testimony is necessary to establish the causal connection."); <u>Houp v. United States</u>, No. 2:20-CV-00432 , 2021 WL 4894531, at *4 (W.D. Pa. Oct. 20, 2021) (concluding medical testimony was necessary to establish causation in light of the plaintiff's "significant prior history wherein he describes similar symptoms" because "factfinders need a qualified medical expert to explain and opine on how the symptoms . . . may have been different"); <u>Myers v. Edwards</u>, No. 1:13–CV–00792, 2015 WL 507151, at *3 (M.D. Pa. Feb. 6, 2015) ("As a layman could not 'easily diagnose' the causal connection with respect to [the] [p]laintiff's alleged injuries, given the evidence in the record suggesting that [the] [p]laintiff may have had a pre-existing condition, expert medical testimony is ultimately necessary to prove causation.")

[14] Because Plaintiff has failed to offer evidence creating a genuine dispute of material fact that Defendants' products were defective and that such defects caused Plaintiff's injury, the Court finds it unnecessary to determine whether the alleged "defect causing the injury existed at the time the product left the seller's hands."  <u>Pavlik</u>, 135 F.3d at 881.

Plaintiff's strict liability claim, <u>supra</u>, the Court need only address the parties' <u>res ipsa loquitur</u> arguments.  <u>See Whyte</u>, 514 F. Supp. 3d at 703 (acknowledging that the issue of causation is common to both strict liability and negligence claims and therefore applying the court's analysis of causation in strict liability to the plaintiff's claim for negligence).

<u>Res ipsa loquitur</u> is an "evidentiary rule allowing negligence to be established by circumstantial proof."[15]  <u>Gilbert v. Korvette, Inc.</u>, 327 A.2d 94, 96-97 (Pa. 1974).  "It . . . provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence."  <u>Quinby v. Plumsteadville Fam. Prac., Inc.</u>, 907 A.2d 1061, 1071 (Pa. 2006).  Pennsylvania has adopted the Restatement (Second) of Torts' rule on <u>res ipsa loquitur</u>:

> It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; <u>and</u>
>> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D(1) (emphasis added); <u>Quinby</u>, 907 A.2d at 1071.[16]

---

[15]  To the extent the doctrine of <u>res ipsa loquitur</u> is applicable to claims of strict liability, Plaintiff's failure to eliminate other responsible causes for the bread's alleged defects precludes the applicability of this doctrine to his strict liability claim.  <u>See</u> 63 Am. Jur. 2d Products Liability § 539 (2024) (explaining that <u>res ipsa loquitur</u> "has variously been held to be inapplicable or applicable only by analogy in strict liability cases," but that some authority holds that "a <u>res ipsa</u> type inference is enough to establish a defect in the product if [the] plaintiff can show that they were properly using the product and can negate other possible causes of the product's failure after it left the manufacturer's control").

[16]  Plaintiff mistakenly asserts that the Restatement (Second) of Torts' rule on <u>res ipsa loquitur</u> only requires one of the three requirements to be proven.  (Doc. No. 134 at 18.)  However, the use

Here, Defendants contend that Plaintiff cannot rely on res ipsa loquitur because Plaintiff fails to offer sufficient evidence to establish the first and second elements of res ipsa loquitur. (Doc. No. 131-1 at 15.)  More specifically, Defendants make the following two arguments:  (1) Plaintiff must have expert testimony to prove that the alleged product defect would not ordinarily occur in the absence of negligence; and (2) Plaintiff has failed to produce evidence that sufficiently eliminates other potential causes for the bread's discoloration as well as for Plaintiff's illness.  (Id. at 15-16.)

In response to Defendants' first argument, Plaintiff claims "food poisoning ordinarily does not occur in the absence of negligence."  (Doc. No. 134 at 26.)  To support this notion, Plaintiff argues "an inference of negligence [arises] from the mere fact of a presence of foreign substances in the packages of [Defendants'] bread."  (Id.)  But, as discussed above, the pictures of "multi-color large greenish areas [] clearly showing [an] unmistakable resemblance to mold contamination" do not give rise to an inference of negligence because the mold simply could have grown on Defendants' 12 Grain Bread after Plaintiff purchased the bread.  (See Doc. No. 134 at 22.)  Put another way, the mold may not have been there at the time of purchase.  And to reiterate Defendants' assertion from above, "[b]read gets moldy for many reasons, many of which have nothing to do with the bakers or the stores that sell[] the product."  (Doc. No. 131-1 at 10.) Furthermore, with only a picture of the "black conglomerate" found in Defendants' Enriched White Bread and without expert testimony identifying the "black conglomerate," a genuine dispute of material fact raising an inference of negligence similarly does not arise.  As above, if Plaintiff had tested the "black conglomerate" and confirmed that it "appeared to be something like a large piece

---

of "and" in the language of the rule makes clear that all three requirements are needed to succeed on a claim of res ipsa loquitur.

of foreign object and/or dirt, and/or rodent/rat excrement," this would support Plaintiff's argument that the inclusion of this foreign substance in Defendants' bread would not ordinarily occur in the absence of negligence.  (See Doc. No. 34 at ¶ 70.)  But without such evidence, no genuine dispute of material fact raising the inference of negligence is present.

Moreover, even if Plaintiff did offer evidence establishing a genuine issue of material fact as to whether "foreign substances" in Defendants' bread would ordinarily not occur absent negligence, Plaintiff has not produced evidence that sufficiently eliminates other potential causes for the presence of "foreign substances" in the bread or even for his injuries.  In response to Defendants' second argument, Plaintiff claims that "only [Defendants] were able to introduce the foreign substances resembling mold into Lidl's 12 Grain Bread."  (Doc. No. 134 at 27 (internal citations omitted).)  But mold grows on bread without the party being negligent.  Furthermore, despite Plaintiff's argument that "only Defendants' negligence caused Plaintiff's injuries," he fails to produce evidence demonstrating that "his stomach upset was not the result of a virus, or that it may have been caused by some other food he ingested that day."  (Id. at 28; Doc. No. 144 at 4.)  Put simply, he has not sufficiently eliminated with evidence other responsible causes.  Thus, without any admissible evidence other than photographs, Plaintiff cannot rely on the doctrine of res ipsa loquitur to establish a genuine issue of material fact exists on causation.  Accordingly, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on the Count V negligence claim.

### D.    Summary Judgment Will Be Granted on Plaintiff's Breach of Implied Warranty of Merchantability Claim (Count III)

Because Plaintiff fails to offer evidence demonstrating Defendants' bread malfunctioned or the absence of other reasonable secondary causes, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on Count III.  In Pennsylvania, claims for a breach of the implied

warranty of merchantability are governed by Section 2314 of the Uniform Commercial Code.[17]

See 13 PA. CONS. STAT. § 2314 (1980); Loduca v. WellPet LLC, et al., 549 F. Supp. 3d 391, 404

(E.D. Pa. July 13, 2021).  To establish a breach of the implied warranty of merchantability, a

plaintiff must show that he purchased a product unfit for its ordinary purpose by alleging that "(1)

the product malfunctioned; (2) that [the] plaintiff used the product as intended or reasonably

expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Loduca,

549 F. Supp. 3d at 405.

Here, Defendants argue that Plaintiff cannot prove the bread malfunctioned because "he

cannot prove the bread contained mold and/or rodent excrement that caused him injuries or that

the bread contained any foreign substances when sold."  (Doc. No. 131-1 at 18.)  In response,

Plaintiff merely offers the conclusion that "Defendants' products were not suitable for the ordinary

---

[17] 13 Pa. Cons. Stat. § 2314 provides as follows:

    (a) Sale by merchant.--Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
    (b) Merchantability standards for goods.--Goods to be merchantable must be at least such as:
        (1) pass without objection in the trade under the contract description;
        (2) in the case of fungible goods, are of fair average quality within the description;
        (3) are fit for the ordinary purposes for which such goods are used;
        (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
        (5) are adequately contained, packaged, and labeled as the agreement may require; and
        (6) conform to the promises or affirmations of fact made on the container or label if any.
    (c) Course of dealing or usage of trade.--Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade.

13 PA. CONS. STAT. § 2314 (1980).

purposes for which [they were] advertised to be used." (Doc. No. 134 at 29.) Because the only admissible evidence Plaintiff offers in support of his claims are the photographs of the bread, Plaintiff has failed to demonstrate a genuine dispute of material fact that the bread malfunctioned or that there is an absence of other reasonable secondary causes of his ailments. As discussed at length above, the pictures of the "multi-color large greenish areas" on Defendants' 12 Grain Bread do not demonstrate that the bread malfunctioned. (See Doc. No. 134 at 22.) As noted already, all bread gets moldy and the alleged mold shown in the pictures may have occurred after Plaintiff bought the bread, which is a reasonable secondary cause of the alleged malfunction.

Similarly, the "black conglomerate" pictured inside Defendants' Enriched White Bread does not establish that the bread malfunctioned. Because Plaintiff neglected to test the "black conglomerate," its identity is unknown. While Plaintiff speculates that the "black conglomerate" was "something like a large piece of foreign object and/or dirt, and/or rodent/rat excrement," the picture provided by Plaintiff supports similar speculation that the "black conglomerate" could instead be a fleck of burnt bread or a stray grain from Defendants' 12 Grain Bread accidentally baked into the Enriched White Bread. (See Doc. No. 34 at ¶ 70; Doc. No. 136, Ex. E.) Merely presenting a picture with a black speck inside bread does nothing to establish that the bread malfunctioned. Accordingly, because Plaintiff again has not shown a genuine dispute of material fact exists on his breach of the implied warranty of merchantability claim alleged in Count III, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on this Count.

### E.   Summary Judgment Will Be Granted on Plaintiff's Negligent Infliction of Emotional Distress Claim (Count VII)

Because Plaintiff failed to establish a genuine dispute of material fact exists on his negligence claim, his negligent infliction of emotional distress claim also fails and Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on Count VII. In Pennsylvania, a

claim for negligent infliction of emotional distress must fit within one of the four following scenarios: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197 (Pa. 2008). If the facts fit within one of these four scenarios, a plaintiff must then allege he suffered at least some physical harm as well as "some emotional disturbance beyond 'transitory, nonrecurring physical phenomena, harmless in themselves' and tantamount to physical harm that 'may be classified by the courts as illness, notwithstanding their mental character.'" Runner v. C.R. Board, 108 F. Supp. 3d 261, 273 (E.D. Pa. 2015) (quoting Restatement (Second) of Torts § 436A cmt. c). However, a claim for negligent infliction of emotional distress cannot survive absent an initial finding of negligence. Jordan v. Pa. State Univ., 276 A.3d 751, 774 (Pa. Super. Ct. 2022). "In other words, a plaintiff must establish a negligence claim in order to prevail under any theory of a negligent infliction of emotional distress claim." Ortiz v. United States, No. 1:23-cv-00203, 2024 WL 1620790, at *20 (M.D. Pa. Apr. 15, 2024).

Here, there is no genuine dispute of material fact to support Plaintiff's negligent infliction of emotional distress claim because Plaintiff cannot establish a viable negligence claim. The Court has already found that Plaintiff's negligence claim fails because Plaintiff was unable to put forth evidence establishing causation. Without a viable claim for negligence, Plaintiff's negligent infliction of emotional distress claim also fails. Accordingly, Plaintiff has again not established that a genuine dispute of material fact exists on his negligent infliction of emotional distress claim alleged in Count VII and Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted on this Count.

**V.**     **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 131) will be granted.  An appropriate Order follows.